[721 NYS2d 356]

In the Matter of ARTHUR M. WISEHART (Admitted as ARTHUR McKEE WISEHART), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, March 8, 2001

### APPEARANCES OF COUNSEL

*Andral N. Bratton* of counsel (*Thomas J. Cahill,* attorney), for petitioner.

*Michael A. Gentile* of counsel (*Gentile, Brotman, Maltz & Benjamin,* attorneys), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Arthur M. Wisehart was admitted to practice in

the State of New York in 1955 and has maintained a law office in the First Judicial Department at all times relevant to these charges.

The Departmental Disciplinary Committee seeks an order confirming the Hearing Panel report that sustained, partially or fully, four of eight charges of misconduct brought against respondent and recommended a suspension of no less than three months. Respondent cross-moves to disaffirm the report insofar as it partially sustained Counts One and Two and fully sustained Counts Four and Six and to affirm the report insofar as it struck portions of Counts One and Two and fully dismissed Counts Three, Five, Seven and Eight. We confirm the report as to the sustained charges, disaffirm the report as to the dismissal of Count Three and sustain that charge, deny respondent's motion in its entirety, and order respondent suspended from the practice of law for two years.

The charges against respondent arise out of his representation of one Joan Lipin in a sexual harassment and sex discrimination case against Robert Bender and the American Red Cross of Greater New York (Red Cross), her former supervisor and former employer, respectively, which Lipin commenced after the Red Cross terminated her employment in February 1988. On June 28, 1991, Lipin, who was by then employed by respondent as a salaried paralegal, accompanied him to a discovery conference before a Special Referee in New York County Supreme Court. She found on the table in front of her a stack of some 200 pages, the top sheet of which was marked with the name of the firm representing the defendants, Weil, Gotshal & Manges, and identified as a memo to file from Lawrence Baer, a Weil, Gotshal associate. On this page there was a summary of counsel's meeting with a Red Cross employee who related her candid impressions of Lipin and her account of the legal advice that Weil, Gotshal had given regarding the termination of Lipin's employment. In the next few pages, Lipin recognized summaries of Baer's interviews of other Red Cross employees, including Bender, and deposition digests. She concealed the documents in a folder, slipped them off the table and onto her lap, and continued to read. During a break in the conference, Lipin took the documents out into the corridor, where she told respondent what she had done.

Respondent said he would not read the documents himself until he had obtained a second opinion, but he instructed Lipin to go to his office, make copies of the documents and bring the

originals back to court. He further instructed her that if Baer discovered his documents were missing, she was to tell "the truth," i.e., that she picked them up by mistake. Respondent reviewed the documents himself on June 30th, and on July 1st he hand-delivered a note to counsel asking him to attend a "settlement conference" at respondent's office the next afternoon. At the ensuing meeting, respondent confronted counsel with the documents and demanded the immediate termination of Bender's employment, a monetary settlement, and other reparations. Counsel demanded to know how he had obtained the documents. Citing attorney-client privilege, respondent would say only that Lipin had acquired them legitimately. He also advised counsel that Lipin had retained a copy "for her own protection" and that he had no control over what she might do with the information.

On July 3rd, defendants moved for the suppression and return of the documents, disqualification of respondent as Lipin's counsel, and other relief. On the same day, the parties appeared before Justice Karla Moskowitz, who scheduled hearings on the issues raised, directed Lipin to turn over to respondent "everything in her possession," and directed respondent to secure all copies and not to make any use of the documents. After Lipin had testified at the hearing, which began on July 8th, defendants amended their request for relief to include dismissal of the complaint, on the ground that Lipin's, and respondent's, knowledge of the documents had irreparably harmed the defendants, severely prejudiced their ability to defend, and "poisoned" the case.

On July 29th, in support of a motion to compel disclosure in a separate discovery dispute, respondent submitted a memorandum of law to the Special Referee in which he referred specifically to information that he could only have obtained from the documents Justice Moskowitz had directed him not to use. Defense counsel argued that respondent's violation of the court's directive underscored the need for dismissal of the action.

On January 9, 1992, following a further motion to dismiss based on discovery abuse, Justice Moskowitz dismissed the action in a decision read into the record. Having reviewed the documents in camera, the court found that the documents on their face clearly were attorney work product and that, as an employee of her counsel, Lipin had an obligation to return them to opposing counsel, instead of which she copied them and made notes of their contents. "There is no justification for

the actions that the plaintiff took in this case, and that Mr. Wisehart then took with her." The court concluded that:

> "the actions of the plaintiff and her attorney were so egregious in taking this material that was clearly the attorney's work product, clearly interviews with the defendant's employees, clearly not for perusal by any other attorney or litigant in this litigation, so heinous that the only remedy, as much as I dislike to do this, is to dismiss the lawsuit. Otherwise, there is no meaning to privilege, there is no meaning to conduct among attorneys, and there is no rule of law."

On July 10, 1992, defendants moved by order to show cause to have Lipin and respondent found in contempt of the court's January 9, 1992 order directing them not to make use of the information in the documents, as they had used the information as a basis for certain allegations in an action Lipin filed in the United States District Court for the Southern District of New York; to further restrain Lipin and respondent from disseminating or using the information; to sanction Lipin and respondent; to disqualify respondent as counsel to Lipin; and to confirm that the January 9, 1992 order dismissing the complaint was "with prejudice." Lipin had recommenced her action in Federal Court, after the case was dismissed in Supreme Court but before her appeal had been heard in this Court, on the theory that the Supreme Court dismissal was not "with prejudice"; defendants had been granted a stay of the Federal action until they could seek relief in State court for the improper use of the documents.

Lipin cross-moved to recuse and disqualify Justice Moskowitz from further involvement in the litigation on the ground, *inter alia*, of "personal bias or prejudice," and for other relief. In support of this motion, Lipin asserted in an affidavit that Baer had deliberately placed the documents in front of her at the conference "with the deliberate intent of either intimidating me or derailing this litigation (or both)," and that "[o]nly naked political power or influence can account for the fact that a matter for which a simple order of preclusion or suppression would suffice, Justice Moskowitz complied with [opposing counsel]'s request to dismiss my claim of sexual harassment." Lipin alleged that Justice Moskowitz's bias and prejudice was shown "by her evident unpreparedness" and her "obvious state of disarray" when she rendered her decision. Lipin further alleged a connection between Justice Moskowitz's decision and

Andrew Cuomo, son of the former Governor of New York State, and other "influential persons in Democratic politics," and asserted that Justice Moskowitz was "not against civil rights generally [but] * * * against the enforcement of *my* civil rights, as an outgrowth of intimidation or reprisals by the entrenched political power of defendants and their counsel" (emphasis in original).

In his memorandum of law in support of Lipin's cross motion, respondent cited "the specific statements of fact set forth at length" in Lipin's affidavit, and stated:

> "As shown in the plaintiff's [Lipin's] affidavit, personal bias and prejudice on the part of the judge was also shown in the Draconian and bizarre decision and demeanor of the judge, and in contemporaneous political factors involved in her elevation and election as a Supreme Court Justice requiring disqualification."

At the hearing on the motion, the following colloquy was had:

> "THE COURT: I think these are scurrilous allegations.
>
> "MR. WISEHART: Can I be heard before you rule?
>
> "THE COURT: No, you cannot be heard.
>
> "MR. WISEHART: I cannot be heard?
>
> "THE COURT: No, because I am going to tell you something right now. I have read all these papers—
>
> "MR. WISEHART: Well, I have something further to say, your Honor.
>
> "THE COURT: Could you just keep quiet?
>
> "MR. WISEHART: Your Honor—
>
> "THE COURT: Mr. Wisehart—
>
> "MR. WISEHART: I insist on being heard. If you are going to send me to the [T]ombs because I want to be heard, you go ahead and do it.
>
> "It says 'In God We Trust' up there. We do not trust in this Court as it is presently constituted."

On the ground that she could not be fair to the parties after reading what she called the "scurrilous," "baseless," and "ridic-

ulous" material on recusal, Justice Moskowitz recused herself from the case, adding:

> "Now, that means Mr. Wisehart has accomplished exactly what he had set out to accomplish, which is to obtain my recusal from this case. But I am not doing it for the reasons that his clients [sic] set forth in an affirmation, because I don't even understand them. * * * But Mr. Wisehart's comments last week in open court, and his screaming and his loss of control in open court, and his addressing of the Court in the way he did, and his addressing today of this Court, have made it so that I cannot be fair to either side in this case anymore."

Justice Moskowitz's order of dismissal was unanimously affirmed on May 11, 1993 by this Court (*Lipin v Bender*, 193 AD2d 424), and on November 1, 1994 by the Court of Appeals (84 NY2d 562).

Lipin then moved for reargument of the order of the Court of Appeals. In her affidavit in support of the motion, Lipin presented information "concerning the medical condition of Justice Moskowitz, involving breast cancer, a mastectomy and chemotherapy treatment that coincided with the decision [to dismiss]" and information "involving the non-judicial relationships between Justice Moskowitz and the Chief Judge who wrote the opinion in this case involving the subject matter of said medical condition that I believe adversely affected their ability fairly, and judiciously to decide the matter before her [sic]." Lipin alleged, *inter alia*, as follows:

> "As a trained health care professional, and the daughter of an eminent neuro-psychiatrist, I know that cancer in general and mastectomies in particular typically involve trauma with profound psychological consequences.

> "It is clinically known that women who are diagnosed with breast cancer in general, and those women who must undergo a single or double mastectomy in particular, may experience profound psychiatric trauma and stress resulting in intense anger directed inwardly and outwardly towards other "normal" woman [sic], loss of sexual self-worth and attractiveness as a woman, and severe depression resulting in short and long term psychological consequences.

"The Moskowitz decision dated January 9, 1992, was issued while the judge was affected by extreme anxiety, shock, fear and depression that would have had to impair her judgment and render her unfit to exercise judgment in a matter involving the claim of a female victim of sexual harassment.

"Chief Judge Kaye would have had personal and *ex parte* knowledge of such circumstances affecting the judicial decision making process, and a partisan, non-judicial interest in the existence of such disability on the part of Justice Moskowitz, but did not disclose such knowledge, interest or circumstances notwithstanding her pivotal and improper role in writing this Court's opinion [affirming the dismissal]."

Respondent submitted a memorandum of law in which he referred to these allegations, with citations to Lipin's affidavit, and stated:

"The condition of breast cancer and ensuing mastectomy and chemotherapy of Justice Moskowitz is regrettable. However, the public should know that a person in such a situation is subject to pre- and post-traumatic mastectomy syndrome, a high degree of anxiety and depression, extreme psychiatric disorders, psychological trauma and to mind-altering side effects resulting from the drugs used for chemotherapy. [Cites to Lipin affidavit omitted.]

"The affidavit of appellant * * * demonstrates that the decision of Justice Moskowitz should not have been affirmed as a permissible act of discretion, but that it should be vacated and the matter remanded for further proceedings before a different judge, particularly in light of the subsequent action of Justice Moskowitz in recusing herself from the case for bias and prejudice."

The Court of Appeals denied the motion for reargument. This Court subsequently affirmed entry of the final judgment dismissing the civil action with prejudice. All of Lipin's applications to the United States District Court for the Southern District of New York, the United States Court of Appeals for the Second Circuit and the United States Supreme Court were denied, and the Federal actions were dismissed with prejudice.

In the words of the Hearing Panel:

"This case is a tragedy of epic proportions. It is tragic that by virtue of respondent's actions and those of his client and employee, Ms. Lipin, her case was ultimately dismissed without any resolution on the merits. It is tragic that respondent now finds himself the subject of disciplinary action based on actions taken and words used by him on behalf of his client/employee during the course of a litigation which, upon discovery of the privileged documents, if properly and *fairly* utilized, he was poised to win. [Emphasis in original.]

"But it is even more tragic that in pursuit of victory in litigation, respondent, an attorney for nearly 50 years, apparently lost sight of his moral, ethical and legal obligations to the Court, the public, and his opposing counsels [*sic*], and saw fit to use any and every means and avenue available to him in his efforts to 'win.' * * *

"The recklessness of respondent's actions in this matter has been astounding, particularly in light of respondent's substantial experience as a litigator."

Count One, as sustained by the Hearing Panel, alleges that by condoning the use of privileged documents by his client/employee Lipin, by failing to advise the court and his adversary immediately of Lipin's theft, by scheduling a "settlement conference" with his adversary without informing his adversary of his possession of the stolen documents, and by using the stolen documents to try to extract a settlement from his adversary, respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3).

Respondent argues that the issues of whether the documents were privileged and whether that should have been apparent to him *"under the circumstances of that moment in time in 1991"* (emphasis in original) were not resolved by the decisions of this Court and the Court of Appeals, and that this Court should not give collateral estoppel effect to either decision, thereby precluding "true review by this Court *of the issue of the reasonableness of my state of mind and my actions nearly a decade ago"* (emphasis in original). Respondent is correct that both Courts agreed that the documents fall within the ambit of work product and the attorney-client privilege. But this Court

stated, in affirming Justice Moskowitz's order dismissing the action, that, "regardless of whether the documents were privileged, the highly improper manner in which they were obtained, combined with their subsequent use by plaintiff's counsel to defendants' detriment, constitutes a sufficient basis for the court's action [citation omitted]" (193 AD2d, at 428, *supra*). And, in affirming this Court's order, the Court of Appeals stated, "There can be no doubt that plaintiff's conduct was—to say the least—a breach of the orderly disclosure scheme set forth in CPLR article 31" (84 NY2d, at 570, *supra*). Even as of a decade ago, respondent had been practicing law for 35 years, and he should have known better.

Count Two, as sustained by the Hearing Panel, alleges that by failing to advise the court immediately of Lipin's theft, and by making reckless accusations against Justice Moskowitz and Judge Kaye, respondent engaged in conduct prejudicial to the administration of justice, in violation of DR 1-102 (a) (5).

Respondent argues that he may not be disciplined for Lipin's remarks, even though he included them in the legal papers he submitted to the court, "especially since those words were intended to secure for Lipin her due process right to a fair hearing." The Hearing Panel noted that respondent was not charged, nor could he be charged, with Lipin's sworn statements, but that his memorandum of law in support of the cross motion to recuse "does not refute or seek to explain any of the bizarre, convoluted allegations in his client/employee's affidavit, and seeks to provide legal support and justification for those statements and allegations." Respondent's memorandum of law in support of the motion for reargument to the Court of Appeals also seeks to add legal justification to Lipin's "bizarre" affidavit "and does not refute or temper any of the spurious conjectures of Ms. Lipin."

Respondent contends that his remarks about Judge Kaye and Justice Moskowitz are protected speech under the First Amendment, citing the Ninth Circuit's objective malice standard in *Standing Committee on Discipline v Yagman* (55 F3d 1430 [only false statements made with either knowledge of their falsity or reckless disregard for their truth or falsity are sanctionable]). We decline to follow the Ninth Circuit's reasoning. In this jurisdiction, an attorney who makes "false, scandalous or other improper attacks" upon a judicial officer is subject to discipline (*see, Matter of Bevans*, 225 App Div 427, 431). Attacks such as respondent's "derogatory, undignified and inexcusable" remarks (*Matter of Dinhofer, infra*, 257 AD2d

326, 327) tend to undermine "the respect and confidence of the members of his profession and of the society which he serves" (Code of Professional Responsibility, Preamble and Preliminary Statement, reprinted in McKinney's Cons Laws of NY, Book 29, Judiciary Law, Appendix at 354), and will not be countenanced.

Count Three alleges that by disregarding Justice Moskowitz's July 3, 1991 directive to make no use of the documents in litigation and to secure any and all copies, respondent disregarded a ruling of a tribunal, in violation of DR 7-106 (a) (22 NYCRR 1200.37). In its amended interim report of December 24, 1998, the Hearing Panel dismissed this charge without explanation, but in its sanction report of March 14, 2000, the Panel found, despite respondent's assertion that there were other sources, that specific references in the memorandum of law he submitted to the Special Referee in July 1991 "could only have come from the privileged documents which JSC Moskowitz explicitly directed respondent not to use in the litigation." We therefore disaffirm the report insofar as it dismissed Count Three, and sustain that charge.

Count Four alleges that respondent's scurrilous remarks to and about Justice Moskowitz constituted undignified or discourteous conduct degrading to a tribunal, in violation of DR 7-106 (c) (6).

Count Six alleges that respondent's conduct adversely reflected upon his fitness to practice law, in violation of DR 1-102 (a) (7).

We find the evidence sufficient to sustain these charges.

On the issue of sanction, the Hearing Panel considered respondent's unblemished career of more than 40 years, "his commitment to achieving justice for his clients," and his skill as an attorney. Respondent states that this proceeding has been "the most upsetting and traumatic experience of my entire career" and that any further punishment would cause irreparable injury, "not only to my own career and reputation, but also to my ability to represent needy clients effectively." However, the Panel also pointed out that "up to and including this proceeding, respondent appears to lack any remorse for his actions and has continued his pattern of making unsubstantiated and reckless allegations against any tribunal with which he disagrees, apparently in the name of zealous advocacy." The Panel noted that respondent sought recusal of the Special Referee in this case; he sought Justice Moskowitz's recusal; he charged the Chief Judge with impropriety; and he sought recusal of the chairman of the Hearing Panel. "Thus respondent's

pattern and practices are clear—when all else fails, he simply conjures up false, reckless and highly *personal* charges against the 'offending' tribunal, and seeks recusal in an effort to delay or otherwise obfuscate the issues" (emphasis in original). (Respondent also sought recusal of District Judge Leonard Sand in one of Lipin's Federal actions.) In determining an appropriate sanction, the Hearing Panel surveyed the pertinent disciplinary case law involving an attorney's language before a court and during the course of litigation (*see, Matter of Golub*, 190 AD2d 110 [attorney received public censure for reckless statements to the press about a Judge, after he admitted the charges against him, stipulated to a public censure, and personally apologized to the Judge]; *Matter of Mordkofsky*, 232 AD2d 863, *lv denied* 89 NY2d 817 [attorney was suspended for six months for repeatedly making false and unsupported allegations of corruption against Judges, notwithstanding a previously unblemished 40-year career]; *Matter of Dinhofer*, 257 AD2d 326 [attorney who accused a Judge of being "corrupt" during a telephone status conference in which he appeared on behalf of his client was publicly censured by the United States District Court for the Southern District of New York and suspended by this Court for three months, despite having no previous disciplinary record, apologizing to the Judge, admitting his offense, and joining in the Committee's request that he be publicly censured]). Taking into account the fact that respondent was also charged in connection with his use of the wrongfully obtained documents, the Panel recommended a three-month suspension. The Departmental Disciplinary Committee suggests that a sanction greater than the recommended three-month suspension would be appropriate.

There can be no doubt that a harsher sanction is warranted in this case. Notwithstanding that respondent has no other disciplinary record in a long career, his conduct in this case adversely reflects upon his fitness to practice law and requires more than a suspension of three months.

Accordingly, the Hearing Panel report should be confirmed as to the sustained charges and disaffirmed as to the dismissal of Count Three and that charge should be sustained, respondent's cross motion should be denied accordingly, and respondent should be suspended from the practice of law for two years.

NARDELLI, J. P., WILLIAMS, ELLERIN, LERNER and RUBIN, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of two years, effective April 9, 2001, and until the further order of this Court, as indicated.