[800 NYS2d 651]

In the Matter of Samuel A. Abady (Admitted as Samuel Aaron Abady), an Attorney, Respondent. Departmental Disciplinary Committee for the First Judicial Department, Petitioner.

First Department, June 30, 2005

### APPEARANCES OF COUNSEL

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Eileen J. Shields* and *Joseph J. Hester* of counsel), for petitioner.

*Hinshaw & Culberterson, LLP*, New York City (*Richard Supple* and *Hal R. Lieberman* of counsel), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Samuel A. Abady was admitted to the practice of law in the State of New York by the First Judicial Department on January 18, 1982. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

In December 2001, the Departmental Disciplinary Committee (Committee) served respondent with a notice and statement of charges alleging 28 counts of professional misconduct against him involving seven separate legal matters. The charges alleged that respondent engaged in a pattern of misconduct including the repeated disregard of court orders and directives; misrepresentations to clients, adversaries and courts; and the repeated neglect of client matters, often resulting in default judgments. By order entered November 28, 2001, this Court appointed a Referee to hear and report on the charges. Respondent filed an answer with affirmative defenses in January 2002.

Prior to the hearing, the Committee made a motion before the Referee requesting that the doctrine of collateral estoppel be applied to find respondent guilty of 11 of the 28 counts charged, based upon the findings and decisions issued by four courts. Respondent opposed the motion, and by decision dated November 1, 2002, the Referee granted the collateral estoppel motion on six of the 11 counts requested.

Following 23 days of liability hearings on the remaining counts, the Referee issued a February 18, 2003 report sustaining 12 other counts (or subparts of counts) and dismissing 13 counts (or subparts). Three days of sanction hearings were held, with the Committee recommending disbarment and respondent, citing various mitigating factors, arguing for a public censure. In a final report dated May 5, 2003, the Referee recommended a five-year suspension.

A Hearing Panel was convened, and it heard oral argument and accepted written submissions from both parties. In a written determination dated March 2, 2004, the Hearing Panel affirmed the Referee's findings of fact and conclusions of law, except as to count 3, which it disaffirmed, and it further affirmed the Referee's recommended sanction of a five-year suspension.

The Committee now moves for an order pursuant to 22 NYCRR 603.4 (d), confirming the Referee's findings of fact and conclusions of law, as modified by the Hearing Panel's recommendation, and imposing a sanction suspending respondent from the practice of law for a period not less than five years. A review of the five matters in which charges were sustained follows.

The Sandyk Matter (Counts 1, 2 and 4)

In March 1997, Reuven Sandyk and Lea Dann (the Sandyks), two medical doctors who where friends of respondent and his wife, were sued in federal court in a patent infringement action. After agreeing to represent them, respondent failed to file and serve a timely answer, resulting in a default judgment against the clients in October 1997. At a subsequent hearing on the instant disciplinary charges, respondent claimed that he had mailed an answer in the Sandyk matter to opposing counsel and left the original in the usual spot for his paralegal to file with the court, but the answer was never filed.

Upon receiving notice of the default, the Sandyks immediately asked respondent to vacate it. Respondent told them that op-

posing counsel would have to vacate the default because the answer had been timely served, and he sent to the Sandyks a copy of a letter addressed to opposing counsel and copied to the federal district judge, which explained that the answer had been timely served and indicating how plaintiff's counsel had acknowledged receipt thereof. This letter, however, was never sent to plaintiff's counsel or the court. In a subsequent letter to the Sandyks, respondent misrepresented that the default judgment was no longer pending since the case was "closed," which the Sandyks understood to mean the default was vacated.

Eventually, the Sandyks hired new counsel, who moved to vacate the default in early 1998. A hearing was held before a federal magistrate, who concluded that the Sandyks default should be vacated since it was the result of the gross negligence of respondent. District Judge Platt confirmed the report, subject to clarification as to who was the attorney responsible for failing to serve and file the answer. Respondent's testimony at these disciplinary proceedings confirmed that he was the attorney of record at the time the answer was not timely filed.

Based on the hearing evidence, the Referee sustained the first two subparts of count 1, charging respondent with misrepresentations to his clients in connection with his failure to file and serve a timely answer in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3). Count 2, charging respondent with neglecting a legal matter entrusted to him in violation of DR 6-101 (a) (3) (22 NYCRR 1200.30), was sustained based on the evidence that respondent failed to move to vacate the default. Count 3, which alleged that respondent failed to seek the lawful objectives of his clients by failing to immediately vacate the default despite the Sandyks' request (DR 7-101 [a] [1] [22 NYCRR 1200.32]), was sustained pursuant to the doctrine of collateral estoppel, based on Judge Platt's findings that respondent's conduct was "grossly negligent and reprehensible."

Based on the findings regarding counts 1 to 3, the Referee also sustained count 4, charging respondent with conduct that adversely reflected on his fitness to practice law (DR 1-102 [a] [7]).

The Hearing Panel affirmed the Referee's findings on counts 1, 2 and 4 in the Sandyk matter, but rejected the Referee's application of collateral estoppel on count 3. The Panel determined that since respondent was not a party to the vacatur proceedings before the magistrate, but rather acted as witness and at-

torney, he did not have a full and fair opportunity to litigate the misconduct underlying count 3.

The RLR Matter (Counts 7 and 9)

Respondent represented the plaintiff, RLR Industries, Inc., in a commercial litigation matter in the Southern District of New York. In September 1997, respondent failed to submit opposition papers to the defendant's summary judgment motion and Judge Kimba Wood granted a default judgment against RLR. In December 1997, respondent moved to vacate the default, which the court granted based on its finding that the default was the result of respondent's "inadvertence and inattention." The court ordered respondent to pay over $22,000 in attorneys' fees and costs, and when respondent failed to pay, a federal magistrate ordered him to pay the amount in either cash or to obtain a bond in that amount, plus 9% interest. Respondent failed to provide a bond with interest and failed to appear personally at a subsequent sanction hearing. The magistrate ordered additional penalties, which respondent paid, and referred the matter to the Southern District's Grievance Committee. After providing respondent with notice and an opportunity to be heard, that Grievance Committee issued a public censure in June 2000 based on respondent's conduct in the RLR and another matter.

At the hearing before the Referee, respondent testified that his failure to respond in the RLR matter resulted from the pending dissolution of his law firm and various personal problems.

Count 7, charging respondent with disregarding the ruling of a tribunal during the course of a proceeding in violation of DR 7-106 (a) (22 NYCRR 1200.37), was sustained by the Referee on the basis of collateral estoppel. The Referee relied on the findings of the Grievance Committee's June 2000 censure order citing respondent for posting a defective bond, failing to promptly cure the defects when ordered to do so by the court, failing to appear in person at the hearing and for being inexcusably late in telephoning the magistrate presiding over the hearing. The Referee further noted that respondent received a full and fair hearing in that proceeding—he submitted papers in opposition to the Grievance Committee's order to show cause, although he failed to appear personally and did not avail himself of two extensions to submit further papers.

Count 9, alleging that respondent's failure to notify the Disciplinary Committee of his discipline by a foreign jurisdiction constituted conduct prejudicial to the administration of justice (DR 1-102 [a] [5]), was sustained based on the hearing evidence.

The Hearing Panel affirmed the Referee's collateral estoppel ruling on count 7, and its liability finding on count 9.

## The Olszewski Matter (Counts 10 to 13)

In 1996, respondent represented plaintiff Mary Ann Olszewski in a sexual discrimination action filed in federal court against her employer. Respondent failed to produce discovery despite a court-ordered deadline, resulting in dismissal of the action. Although that dismissal was vacated upon respondent's request, the action was again dismissed in March 1999, due to respondent's default on the defendant's summary judgment motion filed in October 1998.

Olszewski retained new counsel in March 1999, but respondent refused to turn over the client's file for a period of two months, despite the District Judge's ex parte order that he promptly do so. Although the client persisted for two years trying to get the default vacated, she was unsuccessful and her claim was never litigated.

The District Judge in the Olszewski matter also referred respondent's conduct to the Southern District's Grievance Committee, resulting in the afore-mentioned censure order of June 2000. With respect to the Olszewski matter, that censure order cited respondent's failure to file opposition papers to the defendant's summary judgment motion and his failure to comply with the Judge's ex parte order to turn over his former client's legal file to new counsel.

Count 10, alleging that respondent's pattern of refusing to answer discovery requests resulting in court orders mandating compliance constituted conduct prejudicial to the administration of justice (DR 1-102 [a] [5]), was sustained by the Referee. Count 11, also alleging a violation of DR 1-102 (a) (5), was sustained pursuant to collateral estoppel, based on the Grievance Committee's findings that respondent disobeyed the District Court's ex parte order to turn over the client's file.

Count 12, alleging neglect of a legal matter based on respondent's failure to oppose the summary judgment motion, was sustained based on the hearing evidence (the Referee's application of collateral estoppel was rejected). The Referee also sustained count 13, which alleged that respondent's failure to comply with three specific court orders to produce discovery constituted the disregard of a tribunal's rulings in violation of DR 7-106 (a).

The Hearing Panel affirmed the Referee's findings on counts 10 to 13, including its application of collateral estoppel on count 11.

The Koncelik Matter (Counts 16, 19, 20 to 22)

These charges arose out of a civil action filed against respondent in Supreme Court, Greene County (*Koncelik v Abady*, Index No. 189-670). Prior to that action, in November 1987, respondent represented plaintiff Koncelik's brother in a federal criminal proceeding in the United States District Court for the Northern District of New York. At the brother's arraignment in District Court, respondent had Koncelik sign an assignment of bail agreement, authorizing payment of the $100,000 in bail money to respondent for legal fees at the end of the case. Koncelik alleges that respondent misrepresented the nature of the assignment agreement and when she discovered its purpose, she requested that respondent provide her with a copy, which he failed to do. Koncelik informed the District Court Judge, and hired counsel to vacate the bail assignment. Eventually, respondent was substituted as counsel and the District Court declined to rescind the bail assignment because respondent was no longer involved in the criminal case.

In June 1989, Koncelik sued respondent in Supreme Court, Greene County, alleging that the assignment of bail was entered into under circumstances of fraud and duress. Although respondent filed an answer with affirmative defenses and counterclaims, he continually obstructed Koncelik's efforts to obtain discovery. Respondent failed to appear for his scheduled deposition on more than one occasion and, instead, filed a cross motion for summary judgment. In an October 26, 1990 order, the court sanctioned respondent for failing to notify Koncelik's counsel of his inability to attend the scheduled depositions, ordered him to appear for deposition on a date certain and conditionally precluded him from offering evidence relating to the bill of particulars he had not provided.*

Respondent submitted a check for $950 in sanctions, which was returned for insufficient funds. He never appeared for deposition nor paid any additional sanctions, prompting a motion for contempt and additional sanctions. Ultimately, respondent's answer was stricken in September 1991, a default judgment was entered against him in January 1992 and additional monetary

---

* The court also denied respondent's motion for summary judgment, which was affirmed on appeal.

penalties were imposed. Respondent failed to appear at the April 1992 inquest, after which Supreme Court issued findings of fact that because of his default, all triable issues were resolved in favor of Koncelik and that the assignment of bail had been "executed under fraud and duress by respondent." Accordingly, the bail assignment was rescinded.

Koncelik's attempts to enforce the judgment were similarly obstructed by respondent, resulting in additional orders and sanctions against him. In January 1996, the court held respondent in contempt for his "willful and deliberate failure" to comply with prior orders of the court. In January 1997, he was again cited for contempt for failing to appear at depositions in the enforcement proceeding. In January 1998, the court sanctioned respondent for his past and continued "willful and deliberate refusal to comply with the orders of [the] court."

Instead of complying with the various orders, respondent moved in August 1998, six years after the default was entered, to vacate all orders and judgments against him on the ground that the state court lacked subject matter jurisdiction over the federal bail matter that gave rise to them. Supreme Court denied the motion and the Third Department affirmed (269 AD2d 29 [2000]).

The Referee sustained counts 16, 19 and 21 on the basis of collateral estoppel. Count 16, alleging fraud and deceit in the manner in which respondent obtained the assignment of bail (DR 1-102 [a] [4]) was sustained based on Supreme Court's April 1992 finding, on default, to that effect. Count 19, alleging that respondent engaged in conduct prejudicial to the administration of justice in refusing to provide discovery (DR 1-102 [a] [5]), and count 21, charging him with disregarding the rulings of a tribunal by refusing to comply with the court's orders (DR 7-106 [a]), were both sustained based on Supreme Court's multiple orders making such findings.

Counts 20 and 22, both alleging that respondent engaged in conduct prejudicial to the administration of justice (DR 1-102 [a] [5]), were sustained by the Referee based on the hearing evidence that he failed to pay court-ordered sanctions after being held in contempt and failed to pay the numerous money judgments entered against him. The Referee rejected respondent's argument that his good faith belief that the state court lacked subject matter jurisdiction excused his conduct.

The Hearing Panel upheld each of the Referee's findings in the Koncelik matter.

The Taylor Matter (Counts 26 [c] and [d] to 28)

Respondent represented William Taylor in a criminal DWI matter that was scheduled to proceed to trial on January 8, 1999, in Cortlandt Town Court. On that morning, respondent faxed an affirmation of actual engagement to both the clerk of the court and the prosecutor, representing that he was required to appear before the United States Court of Appeals for the Second Circuit on another matter that morning. The case was adjourned to February 5, 1999, at which time respondent reiterated to the Town Justice that it was not his choice that he was unable to appear on the previous date, since he had a lengthy argument before the Second Circuit.

At the Referee's hearing, the evidence established that respondent had not actually appeared before the Second Circuit on January 8th and that the case cited by respondent was neither calendared nor argued on that date. Rather, respondent had made the choice to file an emergency relief application at the Second Circuit's Clerk's office and spent some time speaking to a court attorney in an unsuccessful attempt to meet with a judge.

Subparts (c) and (d) of count 26 were sustained by the Referee, who found that respondent made "deceitful representations" in violation of DR 1-102 (a) (4) by faxing the false notice of engagement to the court on January 8, 1999, and by making a false statement to the Town Justice on February 5, 1999 when questioned about the matter. Based on the same conduct, the Referee sustained counts 27 and 28, which alleged that respondent's falsehoods constituted conduct prejudicial to the administration of justice (count 27 [DR 1-102 (a) (5)]) and conduct that adversely reflected on his fitness to practice law (count 28 [DR 1-102 (a) (7)]).

The Hearing Panel affirmed each of the charges sustained by the Referee in the Taylor matter.

The Sanction

In March 2003, three days of sanction hearings were held at which the Committee recommended disbarment and respondent suggested a public censure. In her final report, the Referee noted respondent's "questionable conduct" over a lengthy period, in which he often exhibited a "quality of arrogance" and a "cavalier approach" to his law practice. Although she found no "venal intent," she also found respondent's expressions of remorse "limited." In aggravation, the Referee considered the two prior admonitions respondent had received in 1992 and

2000 for neglect of a legal matter and the failure to cooperate with the Committee during an investigation.

In mitigation, respondent asserted that he suffered from depression from 1997 to 1999 triggered by the nasty breakup of his law firm, the death of his sister and a close friend, and complications relating to the schooling of his older child who suffers from Tourette's syndrome. The Referee further noted the "impressive" character testimony on respondent's behalf, his extensive pro bono work and the fact that respondent's lack of discipline handling cases had changed "radically" since the period in question.

Ultimately, the Referee recommended a five-year suspension based on respondent's "reprehensible" conduct that caused serious harm to at least two clients. She further found that the psychiatric testimony offered by respondent was "thin and not very convincing" because the doctors became involved only after the disciplinary proceedings were underway and no "causal link" was ever established between his depression and misconduct. The Referee rejected disbarment as a sanction since the cases cited by the Committee generally involved venality and few, if any, mitigating circumstances.

The Hearing Panel agreed with the Referee's recommended sanction stating: "Putting aside for the moment Respondent's arrogance and lack of respect for the court, fellow counsel and his clients, viewed in its totality Respondent's conduct—even if not considered "venal" as urged by Respondent's counsel—clearly demonstrates to us that Respondent is unfit to engage in the practice of law. Mindful that the primary purpose of attorney disciplinary proceedings is the protection of the public . . . as opposed to punishment, a five-year suspension is appropriate."

The Committee's Motion to Confirm the Hearing Panel Report

The Committee seeks an order confirming the Referee's findings of fact and conclusions of law, as modified by the Hearing Panel's report, and imposing a suspension of not less than five years. Respondent submitted a memorandum of law in opposition, arguing that each of the charges should be disaffirmed and, alternatively, if any are sustained, the sanction should be no worse than a public censure. Respondent also raises significant arguments relating to the Referee's power to invoke the doctrine of collateral estoppel, an issue which requires some discussion.

A. Collateral Estoppel by Referee

"The doctrine of collateral estoppel precludes a party from relitigating 'an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point' " (*Kaufman v Eli Lilly & Co.*, 65 NY2d 449, 455 [1985], quoting *Gilberg v Barbieri*, 53 NY2d 285, 291 [1981]). The two requirements for its application are: first, the identical issue necessarily must have been decided in the prior action and be decisive in the present action, and second, the party to be precluded must have had a full and fair opportunity to contest the prior determination (*Kaufman* at 455; *Schwartz v Public Adm'r of County of Bronx*, 24 NY2d 65, 69 [1969]).

Respondent does not challenge the invocation of collateral estoppel in attorney disciplinary proceedings generally. Nor could he, as the Court of Appeals and numerous appellate courts in this state have upheld the use of collateral estoppel in such proceedings (*see Schwartz*, 24 NY2d 65 [1969]; *Matter of Truong*, 2 AD3d 27, 29-30 [2003]; *Matter of Kramer*, 235 AD2d 87 [1997], *lv denied* 91 NY2d 805 [1998]). Respondent's argument is narrower. He contends that the Referee was without power to make a collateral estoppel ruling because it would exceed her order of reference, which was to hear *and report.* He further asserts that it is bad policy to give referees preclusive power in disciplinary proceedings, since complex collateral estoppel determinations should be left to the court and, from a procedural perspective, such a policy would deprive the court of any opportunity to pass on the merits of the charges in the event of an erroneous collateral estoppel ruling by a referee.

Respondent raised similar arguments before the Referee, who rejected them. The Referee concluded that her authority in legal disciplinary matters is derived from part 605 (22 NYCRR) of the Rules and Procedures of the Departmental Disciplinary Committee of the Appellate Division, First Department (rules), which specifically empower the referee to conduct hearings, make findings of fact and conclusions of law and recommend sanctions it deems appropriate (22 NYCRR 605.22 [a]). The rules further authorize a referee to entertain motions (22 NYCRR 605.17 [c]), rule on the admissibility of evidence (22 NYCRR 605.13 [k]) and make determinations as to what, if any, charges are sustained and sanction should be imposed (22 NYCRR 605.13 [p]). The Referee also cited two disciplinary cases from this Court in which collateral estoppel was applied by a referee (*see Matter of Wisehart*, 281 AD2d 23, 30-31 [2001],

*lv denied* 96 NY2d 935 [2001]; *Matter of Tate*, 258 AD2d 120, 121-122 [1999]).

The Hearing Panel also rejected respondent's challenge to the Referee's authority, but on different grounds. The Panel found that the Referee erroneously relied on her power under the rules to decide motions and make evidentiary rulings as a basis for authorizing collateral estoppel preclusion by a referee, since "collateral estoppel is not an evidentiary matter," but rather "determines an issue," citing *Gramatan Home Invs. Corp. v Lopez* (46 NY2d 481, 485 [1979]). Instead, the Hearing Panel relied on the Court of Appeals' decision in *Matter of Levy* (37 NY2d 279 [1975]), which approved of the use of collateral estoppel by a referee in a disciplinary proceeding.

In *Levy*, the Referee invoked collateral estoppel to preclude the respondent attorney from testifying on the question of his guilt with respect to a prior federal criminal conviction and the Court of Appeals stated that the Referee's ruling was "the correct ruling" (37 NY2d at 281). The Hearing Panel acknowledged, however, that in neither the *Levy* case nor any other holdings involving collateral estoppel by a referee was the referee's power and authority placed directly in issue. Both parties to the instant proceeding ask us to clarify the authority of a referee in this area.

We hold that a referee in a disciplinary proceeding has the power and authority to rule on a collateral estoppel motion. In reaching this conclusion, we rely on the reasoning of both the Referee and Hearing Panel. The Referee correctly concluded that her power is derived from this Court's rules and, contrary to the Hearing Panel's determination, those rules authorize the referee to do more than rule on evidentiary matters, but also to make "Determinations" (22 NYCRR 605.13 [p]). Indeed, because the rules plainly authorize the referee to decide motions, issue finding of facts and conclusions of law and make "[d]eterminations" as to whether charges should be sustained and a sanction imposed, we discern no basis in the rules to deny the referee the power to make a collateral estoppel ruling.

The fact that the referee was appointed to hear and report, as opposed to hear and determine, is no basis to deny collateral estoppel authority. Although the CPLR prohibits a referee appointed to hear and report from entertaining trial and posttrial motions under CPLR article 44 (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 4320), this Court's rules include no such limitation. On the contrary, as

noted, the rules mandate that the referee make certain "[d]eterminations," albeit in the form of recommendation to the Court.

Significantly, under the Court's rules outlining the procedures governing the disciplinary process, *every* finding, ruling and determination by the referee is subject to review by both the Hearing Panel (22 NYCRR 605.14 [a], [g]; 605.22 [b]) and by this Court (22 NYCRR 605.15 [e]), which has the sole authority to impose discipline. Thus, no danger exists that the referee, rather than the court, will finally determine an issue.

The case law cited by both the Referee and Hearing Panel further supports the referee's power to decide collateral estoppel motions. As noted above, the Court of Appeals has at least implicitly approved of a referee's power to make collateral estoppel rulings in the *Levy* case. This Court has likewise done so (*see Matter of Berger,* 1 AD3d 83, 84-85 [2003]; *Matter of Wisehart,* 281 AD2d at 30-31; *Matter of Tate,* 258 AD2d at 121-122; *see also Matter of Latimore,* 252 AD2d 217 [1999], *lv dismissed* 93 NY2d 995 [1999] [collateral estoppel ruling by a Hearing Panel approved]). These holdings, while not directly addressing the referee's power to make collateral estoppel rulings, are persuasive evidence that the appellate courts which have confronted this situation are generally supportive of granting a referee such power in disciplinary proceedings.

A more difficult question is raised by respondent's contention that the Referee and Hearing Panel erred in applying collateral estoppel based on the default judgment in the Koncelik matter. Under New York law, "collateral estoppel effect will only be given to matters actually litigated and determined in a prior action" (*Kaufman v Eli Lilly & Co.,* 65 NY2d at 456 [internal quotation marks omitted]; *see also Koch v Consolidated Edison Co. of N.Y.,* 62 NY2d 548, 554 n 2 [1984], *cert denied* 469 US 1210 [1985]; Restatement [Second] of Judgments § 27). An issue is not actually litigated if "there has been a default, a confession of liability, a failure to place a matter in issue by proper pleading or even because of a stipulation" (*Kaufman* at 456-457; *see also* Restatement [Second] of Judgments § 27, Comments *d, e,* at 255-257).

While the above authorities accurately reflect the general rule with respect to default judgments, this Court has carved out a limited exception where the party against whom collateral estoppel is sought to be invoked has appeared in the prior action or proceeding and has, by deliberate action, refused to defend or

litigate the charge or allegation that is the subject of the preclusion request (*see Kanat v Ochsner*, 301 AD2d 456, 458 [2003]; *Matter of Latimore*, 252 AD2d at 219-220).

In *Kanat* (*supra*), the defendants were previously sued in Massachusetts state court for breach of fiduciary duty and, although they appeared and answered the complaint, they failed to comply with numerous discovery requests resulting in a default judgment on liability. The defendants appeared and testified at the inquest, but a judgment in the amount of $268,835 was entered against them. Thereafter, the *Kanat* plaintiffs commenced an action in New York court alleging similar claims and sought to collaterally estop the defendants from relitigating the issues adjudicated against them in the Massachusetts action.

The trial court upheld the application of collateral estoppel based on the default judgment and this Court affirmed, stating (301 AD2d at 458):

> "Although collateral estoppel is generally not available where the judgment in the prior action was obtained on default, such is not the case here. It is undisputed that defendants appeared and answered in the Massachusetts action and engaged in extensive motion practice caused for the most part by defendants' willful and contumacious pattern of selective, partial responses to various pretrial discovery demands. Defendants therein had a full and fair opportunity to fully litigate the underlying merits of the Massachusetts action, but affirmatively chose not to by their own failure to comply with court orders. Defendants therein charted the course of their own litigation, engaging in conduct intentionally calculated to frustrate and impede the court to whose jurisdiction they submitted by their general appearance and by interposing an answer."

Similarly, in *Latimore* (252 AD2d at 219-220), which was a disciplinary case, this Court upheld the Hearing Panel's application of collateral estoppel to preclude the respondent from relitigating findings made in a prior Supreme Court, Nassau County action that she "repeatedly failed to exercise supervision over *real estate salespersons acting under [her] real estate broker's* license," despite her default in that action. In our decision, this Court noted that the respondent "had ample opportunity to contest the allegations in the Nassau County action," yet she "allowed a default judgment to be entered against her, failed to

persuade the Supreme Court to vacate said default and did not pursue her appeal" (*id.* at 220).

■ Based on *Kanat* and *Latimore,* we hold that collateral estoppel may be properly applied to default judgments where the party against whom preclusion is sought appears in the prior action, yet willfully and deliberately refuses to participate in those litigation proceedings, or abandons them, despite a full and fair opportunity to do so. We also note that although the application of collateral estoppel to default judgments has been permitted in only a minority of jurisdictions (*see In re Catt,* 368 F3d 789, 791 [7th Cir 2004] ["a significant minority of states . . . allow findings made in default proceedings to collaterally estop, provided that the defaulted party could have appeared and defended if he had wanted to"]), the courts in those minority jurisdictions have found exceptions in circumstances analogous to those here (*see id.* [applying Indiana law]; *In re Cantrell,* 329 F3d 1119 [9th Cir 2003] [California law]; *TransDulles Ctr., Inc. v Sharma,* 252 Va 20, 472 SE 2d 274 [1996] [Virginia law]; *In re Caton,* 157 F3d 1026, 1028-1029 [5th Cir 1998], *cert denied* 526 US 1068 [1999] [Illinois law]).

■ Concluding, as we have, that the referee has the power to make collateral estoppel rulings, even as to default judgments in appropriate cases, we now address the Referee's application of the doctrine to the specific charges. With respect to the RLR and Olszewski matters, we find that collateral estoppel was properly based on the Southern District Grievance Committee's censure order relating to those two matters. We reject respondent's argument that the Committee chose the "wrong procedural format" in seeking collateral estoppel instead of a petition for reciprocal discipline under section 603.3 of this Court's rules. Although that section provides an alternative method of discipline, nothing in the rules limits the Committee to that procedure. Nor has respondent stated any basis for the applicability of the defenses to reciprocal discipline enumerated in section 603.3 (c). Respondent cannot be heard to complain about a lack of notice and opportunity to be heard where he submitted papers in response to the Grievance Committee's order to show cause, requested two extensions to file additional papers, but then never did so.

Respondent further argues that the order to show cause procedure utilized by the Southern District's Grievance Committee reversed the burden of proof in that proceeding, thereby rendering it inappropriate for collateral estoppel treatment. We dis-

agree. The law in New York is that an order to show cause, despite its language, does not shift the burden of proof to the nonmovant (Siegel, NY Prac § 248, at 420-421 [4th ed]). Thus, the burden remained on the Grievance Committee to prove respondent's guilt in that proceeding and collateral estoppel treatment of that Committee's censure order was appropriate.

With respect to the application of collateral estoppel in the Koncelik matter, respondent's main argument is based on the default issue, which we have already addressed in general terms. In regards to this case, we find that respondent's default in the Koncelik matter was analogous to the defaults in *Kanat* and *Latimore*. Similar to those cases, respondent appeared in the prior proceeding and opposed the allegations against him, but ultimately abandoned such opposition for long periods. It is easily inferable from this record—where defendant filed an answer, made several motions, pursued two appeals, but ultimately refused to provide discovery and defaulted—that this defendant charted his own course by intentionally refusing to defend the charges despite a full and fair opportunity.

Respondent further claims that issue preclusion was inappropriate since no findings were ever made that he committed fraud with respect to the bail assignment or that his defaults in the Supreme Court action were willful. We could not disagree more strongly, as the willfulness of respondent's defaults is irrefutable based on the pattern of misconduct in the Koncelik case.

### B. Charges Sustained After Hearing

Respondent makes additional arguments concerning the counts sustained by the Referee and Hearing Panel based on the hearing evidence, none of which are substantial. With respect to the Sandyk matter, respondent claims that the conflicting evidence at the hearing did not support the charge that he lied to the Sandyks about sending the letter to plaintiff's counsel and whether the default was vacated. However, the Referee's credibility determinations are entitled to deference by this Court (*Matter of Dwyer*, 285 AD2d 133 [2001]), and we find no basis to disturb them.

Respondent also claims that the Referee's finding of fraud in the Sandyk matter is inconsistent with the Referee's statement elsewhere in her report that respondent never acted with "venal intent." Although we acknowledge the inconsistency, we read the Referee's reference to "venal intent" as referring to something more than deliberate deception, such as malice or

intent to profit (*see Matter of Kantor*, 241 AD2d 103, 105 [1998], *lv denied* 92 NY2d 813 [1998]). We think it is plain from the Referee's report that respondent's falsehoods in the Sandyk matter were found to be deliberate acts.

Respondent's assertions that the charges sustained in the Koncelik matter were improper since his disregard of orders was never proven to be willful before the Referee and he was never served with one of the Appellate Division orders after an appeal are rejected. Notwithstanding respondent's arguments to the contrary, no statute, rule nor case entitles him to disregard court orders simply because he believes they are erroneous.

In short, we reject respondent's arguments and confirm the findings of fact and conclusions of law of the Referee, as modified by the Hearing Panel.

C. Sanction

Respondent offers several arguments in opposition to the Referee and Hearing Panel's recommended five-year suspension, but none is meritorious. His main contention is that a public censure, rather than a suspension, is appropriate where an attorney's misconduct arises from serious psychological problems or traumatic events and the attorney has taken firm steps to resolve the problems, citing *Matter of Meltzer* (293 AD2d 202, 205 [2002]).

While respondent has taken affirmative steps to improve his behavior, his attempt to link his misconduct with his condition of depression is far more questionable. We agree with the Referee's finding that the psychiatric testimony was "thin and not very convincing." While respondent introduced expert testimony as to his diagnosis, he offered little, if any, testimony himself as to how his condition affected his work. Nor do any other facts suggest a connection between depression and his multiple instances of misconduct. None of the medical testimony in this record offered any explanation as to how a condition of depression could lead to deceitful behavior and repeated disregard of court orders. In our view, the connection is wholly speculative and should be given little consideration in mitigation.

For its part, the Committee has made a compelling showing that a lengthy suspension is not only warranted, but in fact is the most lenient of sanctions under these circumstances. As found by the Hearing Panel, respondent committed 17 violations of the disciplinary rules over a 12-year period, involving

five different matters. He has engaged in a pattern of serious professional misconduct, all the while demonstrating an astonishing insensitivity to his legal and ethical obligations. He has caused material harm to at least two clients, and most assuredly caused untold frustration and inconvenience to his clients, opposing counsel and the courts. Although an argument could be made that the duration and seriousness of respondent's misconduct warrants disbarment under our precedents (*see Matter of Brooks*, 271 AD2d 127 [2000], *lv dismissed* 95 NY2d 955 [2000]; *Matter of Feldman*, 252 AD2d 76 [1998]), our conclusion is that respondent's documented improvement warrants a second chance in the form of a suspension.

Accordingly, the Committee's motion for an order confirming the findings of fact and conclusions of law of the Referee, as modified by the Hearing Panel, and imposing a suspension of five years, should be granted and respondent suspended from the practice of law for a period of five years.

MARLOW, J.P., WILLIAMS, GONZALEZ, SWEENY and CATTERSON, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of five years, effective August 1, 2005, and until further order of this Court.