[985 NYS2d 108]

In the Matter of CARL F. LODES, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, April 30, 2014

## APPEARANCES OF COUNSEL

*Gary L. Casella*, White Plains (*Forrest Strauss* of counsel), for petitioner.

*Richard M. Maltz*, PLLC, New York City, for respondent.

## OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Ninth Judicial District served the respondent with a verified petition dated October 25, 2012, containing six charges of professional misconduct. Following a hearing, the Special Referee sustained all six charges. The Grievance Committee now moves to confirm the report of the Special Referee, and to impose such discipline upon the respondent as the Court deems just and proper. The respondent submits a reply in which he does not dispute the Special Referee's findings sustaining the charges. However, he "strongly disagrees with the Referee's characterization of [his] conduct and character." In an accompanying memorandum of law, the respondent addresses the issue of sanctions, requesting the imposition of a public censure. The Grievance Committee asserts, in response, that a public censure is insufficient for conduct involving the payment of kickbacks.

Charge one alleges that the respondent engaged in illegal conduct, which adversely reflects upon his honesty, trustworthiness, or fitness as a lawyer, in violation of former Code of Profes-

sional Responsibility DR 1-102 (a) (3) (22 NYCRR 1200.3 [a] [3]). Prior to in or about 1991, the respondent met and became friendly with an attorney named Vincent Leibell. Thereafter, the two men became friends, both personally and professionally. In or about 1991, with the ostensible support of Leibell (then Putnam County Executive), the respondent became the Putnam County Attorney—an appointed position that he thereafter held continuously until sometime in or about 2008. The respondent hired one or more additional lawyers for the Putnam County Attorney's office with the support of Leibell who, by then, had become a New York State Senator.

In or about February 2000, then State Senator Leibell directed the respondent to advise one of the attorneys whom the respondent had hired that, if the attorney wished to keep his contracts for legal services with Putnam County, he would have to hire Leibell as a consultant and pay Leibell a substantial sum of money. The respondent did as Leibell directed, and came to believe that the attorney made substantial cash payments to Leibell.

In or about 2001, the Putnam County Foundation (hereinafter the Foundation), a not-for-profit corporation, was formed at the impetus of Leibell, by one or more individuals, for the purpose of developing senior housing within Putnam County. The Foundation was initially funded by "member items," also known as "discretionary funds," that were made available to it by Leibell. From in or about December 2001 through in or about April 2005, the respondent served as the part-time Executive Director and legal counsel for the Foundation. Under the terms of the contract, which the respondent executed with the Foundation in December 2001, he was to receive no monetary compensation for his services. Instead, a barter arrangement was negotiated under which, in exchange for the respondent's above-described services, the Foundation would permit the respondent to maintain his law offices within the confines of the Foundation's offices; pay all costs and expenses associated with that space through on or about August 31, 2002, after which the respondent would pay only $350 per month of the larger, total office rental cost; pay for the cost of utilities within the office (including, inter alia, telephone and cleaning services); and pay for the respondent's Lexis/Nexis on-line legal research expenses. In or about the summer of 2002, Leibell advised the respondent that additional funds were being obtained for the Foundation, which would enable it to thereafter pay for "staff" and "legal counsel."

During the period beginning in or about December 2003, and on one or more occasions thereafter, through in or about April 2005, the respondent submitted invoices to, and received payments from, the Foundation, for the legal services he rendered to it. Each time the respondent received such payments, Leibell demanded that the respondent take half of the respondent's post-tax earnings from the Foundation, and pay it to Leibell in the form of a cash payment. Between in or about December 2003, and in or about January 2005, the respondent made multiple such cash payments to Leibell, as demanded.

On or about December 6, 2010, in the United States District Court for the Southern District of New York, Leibell pleaded guilty to one count each of obstruction of justice and subscribing to false and fraudulent federal individual income tax returns, in violation of 18 USC § 1503 and 26 USC § 7206 (1), respectively, based on the facts and events arising from his conduct in connection with the above-described kickback scheme, and his subsequent efforts to conceal the same. Leibell was disbarred by this Court on June 2, 2011 (see Matter of Leibell, 86 AD3d 235 [2011]).

Charge two alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of former Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]), based upon the allegations specified in charge one, and the following: From in or about February 2000, until sometime in or about 2010, the respondent failed to disclose, or otherwise report, Leibell's demands for kickbacks or payments to the Putnam County Foundation's Board of Directors, law enforcement, attorney grievance authorities, or any other authority empowered to investigate or act upon the disclosure. In or about 2010, the respondent was finally contacted and questioned by the United States Department of Justice, which was already investigating Leibell's above-described conduct, at which time he disclosed Leibell's demands, and the payments that had been made to Leibell, for the first time.

Charge three alleges that the respondent failed to comply with his obligation as an attorney to report his knowledge of another attorney's conduct that raises a substantial question as to that attorney's honesty, trustworthiness, or fitness to practice law in violation of former Code of Professional Responsibility DR 1-103 (a) (22 NYCRR 1200.4 [a]) and Rules of Professional Conduct (22 NYCRR 1200.0) rule 8.3 (a), based upon the allegations specified in charges one and two.

Charge four alleges that the respondent engaged in impermissible fee-splitting with another lawyer who was not associated in the same law firm, in violation of former Code of Professional Responsibility DR 2-107 (a) (22 NYCRR 1200.12 [a]), based upon the allegations specified in charges one and two.

Charge five alleges that the respondent collected an illegal or excessive fee, in violation of former Code of Professional Responsibility DR 2-106 (a) (22 NYCRR 1200.11 [a]), based upon the allegations specified in charges one and two, and the following: In addition to his work on behalf of the Putnam County Foundation, the respondent maintained an outside private law practice which he operated out of his offices at the Foundation. Although the respondent's services as in-house counsel and Executive Director of the Foundation had concluded by in or before May 2005, the respondent continued to maintain his personal law office within the Foundation's office space, and continued to accept and enjoy the compensation benefits of the above-described barter arrangement, until sometime in October 2005.

Charge six alleges that the respondent engaged in conduct that adversely reflects upon his fitness as an attorney, in violation of former Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), based upon the allegations specified in charges one, two, and five.

Based upon the evidence adduced, we find that the Special Referee properly sustained all six charges, and the finding is not in dispute. Accordingly, the Grievance Committee's motion to confirm the report of the Special Referee is granted.

In determining an appropriate measure of discipline to impose, we have considered the mitigation proffered by the respondent, to wit, that his misconduct was limited in nature; that he stopped the misconduct voluntarily more than eight years ago; that there has been no misconduct since that time; that the misconduct occurred in response to a threat to his livelihood; and that federal authorities viewed him as a victim/witness, rather than a subject/target, as a result of Leibell's "credible threats." Additionally, the respondent offered evidence of his good character and reputation. Moreover, he stated that he has an otherwise unblemished record in 40 years of practice, he has expressed remorse, there is no likelihood that the conduct will be repeated, and he fully cooperated with disciplinary and governmental authorities, the latter of which without any immunity from prosecution. Finally, the respon-

dent asserted that the significant media attention, which brought about the instant proceeding, has caused him and his family "terrible condemnation," particularly within the small community in which the respondent lives and practices. However, we have also considered the findings of the Special Referee, as follows:

> "It is hard to imagine a clearer or more shocking breach of public trust, and an attorney's ethical obligations, than the ones committed by the respondent. [He] participated in a kick-back scheme by conveying Vincent Leibell's extortionate demands . . . to another attorney, and by repeatedly splitting legal fees with Leibell—an elected New York State Senator, and fellow attorney, who had no right to receive same. This misconduct was an ongoing course of illegal, dishonest and deceitful activity that took place over a more than three-year period—committed by a person in a position of public trust who was uniquely positioned to have stopped it ab initio and who failed to do so at any of the many points he should have during the events that transpired herein. Disturbingly, the respondent's silence appears to have been motivated by a conscious choice to prioritize, protect and preserve the stations and benefits acquired from his association with Leibell over the requirements and obligations of his profession. His actions, which were publicized during the trial and conviction of Leibell, can only have a tremendously negative impact upon the public's confidence in both the Bar and in government in general."

Further, the Special Referee found the respondent to be completely without credibility. The Special Referee's findings on issues of credibility are entitled to "great weight" (*Matter of Rodeman*, 65 AD3d 350, 352 [2009]; *see also Matter of Abady*, 22 AD3d 71 [2005]; *Matter of Cohn*, 194 AD2d 987 [1993]).

Under the totality of the circumstances, we agree with the Special Referee that the respondent's conduct was a blatant breach of the public trust, from which he personally benefitted. Although he had ample opportunity to do so, the respondent failed to approach law enforcement authorities. Rather, law enforcement authorities approached him. We do not find credible the respondent's argument that he did not report Leibell's conduct to the authorities because he would not have been

believed if he had. Just as he wore a wire in or about 2010, he could have done so at an earlier time. Moreover, the purported threat to his livelihood was never realized, even when he independently stopped acceding to Leibell's demands. Accordingly, the respondent is suspended from the practice of law for a period of three years.

ENG, P.J., MASTRO, RIVERA, SKELOS and AUSTIN, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that the respondent, Carl F. Lodes, is suspended from the practice of law for a period of three years, commencing May 30, 2014, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than November 30, 2016. In such application, the respondent shall furnish satisfactory proof that during said period he: (1) refrained from practicing or attempting to practice law; (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (see 22 NYCRR 691.10); (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c) (2); and (4) otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until further order of this Court, the respondent, Carl F. Lodes, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another; (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority; (3) giving to another an opinion as to the law or its application or any advice in relation thereto; and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Carl F. Lodes, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).