[670 NYS2d 448]

In the Matter of STANLEY L. KANTOR (Admitted as STANLEY LEWIS KANTOR), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, March 24, 1998

**APPEARANCES OF COUNSEL**

*Naomi F. Goldstein* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Alan S. Flaster* of counsel *(Messinger, Kantor, Flaster, P. C.,* attorneys), for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent, Stanley L. Kantor, was admitted to the practice of law in the State of New York by the Second Judicial Depart-

ment on February 23, 1972. At all times pertinent to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

Respondent was served with a notice and statement of charges dated November 18, 1996, in which it was alleged that he violated Code of Professional Responsibility DR 1-102 (A) (4) and (6) (now [8]) and DR 7-101 (A) (1) (22 NYCRR 1200.3, 1200.32), by failing to seek the lawful objectives of his client, making material misrepresentations to his client, creating false documents (including signed court orders) and failing to file Federal and State taxes for three years. In April 1997, the parties entered into a prehearing stipulation whereby respondent admitted to most of the allegations.

Hearings were held on May 13, May 20 and June 17, 1997. By a report and recommendation dated October 21, 1997, the Hearing Panel reviewed the evidence, sustained the 15 charges and recommended that respondent be suspended for five years. By petition dated December 1, 1997, the Departmental Disciplinary Committee moved to confirm the Hearing Panel's report. Respondent cross-moved to disaffirm the report, asking this Court to impose a lesser sanction of public censure combined with supervision and psychotherapy.

Except for the charge relating to his failure to file tax returns, the charges against respondent concern his representation of Elliot Sloyer in the latter's civil suit against his father to recover funds allegedly owed to Sloyer under the New York Uniform Gifts to Minors Act. Respondent filed a petition commencing the action in October 1988. The court subsequently ordered the father to file and settle a judicial accounting. After conducting discovery, respondent drafted a motion in 1991 which sought to strike the accounting and order a new one. However, when he went to court to file the motion, he discovered that the father's counsel had never filed the original accounting. The Clerk of the Court advised respondent that the proper remedy under the circumstances was to proceed under SCPA 606 and 607 for an order holding Sloyer's father in contempt for failing to file the judicial accounting.

In April 1992, rather than drafting a petition as required by SCPA 607, respondent drafted an order to show cause, which was rejected by the Clerk. Respondent thereafter failed to properly file a petition to commence the contempt proceeding. Even before respondent filed the papers that were ultimately

rejected by the Clerk, he told Sloyer that he had filed the contempt papers.

From 1992 to 1995, rather than remedy the procedural flaws that had brought the action to a standstill, respondent engaged in a complex scheme of deception to convince Sloyer that the action was proceeding. He fabricated no less than five court orders and presented these to his client, along with correspondence purportedly sent between himself and the father's counsel and motion papers which respondent falsely claimed to have filed. When Sloyer finally realized that he had been deceived, he filed a complaint with the Committee.

In his defense, respondent told the Hearing Panel that his admitted misrepresentations to his client and his falsification of court documents were not violations of DR 1-102 (A) (4) because he lacked any "venal intent" to profit from his actions or to harm his client. Rather, his paralyzing shame at having his order to show cause rejected by the Surrogate's Court Clerk compelled him to deceive his client. Respondent presented the testimony of a psychiatrist who claimed that this "severe injury" to respondent's ego forced him to resort to deception in order to preserve his self-esteem.

The Hearing Panel properly found that "venality" requires only a finding that respondent deliberately and intentionally engaged in deception, and does not require a finding of malice or intent to profit (*Matter of Kreitzer*, 229 AD2d 188, 191). Thus, the Panel sustained the charges under DR 1-102 (A) (4) and (6) (now [8]). Moreover, since respondent's only objectives during the almost four years that he represented Sloyer were to conceal his fraud and protect his ego, the Panel sustained the charge under DR 7-101 (A) (1) that he knowingly failed to seek the objectives of his client (*Matter of Kaufman*, 222 AD2d 107).

In recommending sanctions, the Panel considered aggravating and mitigating factors. The main aggravating factor was that respondent had three prior admonitions, in 1990, 1991 and 1993, one of which was based on a violation of DR 1-102 (A) (4) for fabricating a memorandum decision that he presented to his client as an authentic court document. In mitigation, respondent again referred to his alleged psychological condition and presented character recommendations from two attorneys and a client. The Panel concluded that either disbarment or a five-year suspension would be appropriate, given the "repetitive and protracted nature" of respondent's scheme to deceive his client.

Five-year suspensions have previously been imposed on attorneys who fabricated court documents in order to mislead a client as to the status of his case (*Matter of Nadler*, 229 AD2d 175; *Matter of Roman-Perez*, 195 AD2d 192, *lv denied* 83 NY2d 756). In *Nadler*, for instance, an attorney with no prior disciplinary history fabricated a settlement stipulation and a court decision. A five-year suspension was deemed appropriate despite medical testimony offered in mitigation. Similar conduct has also resulted in disbarment (*Matter of Hunter*, 120 AD2d 214). In *Hunter*, where the respondent had previously received an admonition and a public censure, and was found to have fabricated documents to mislead his client that an action was pending, this Court rejected mitigating evidence by a psychologist that the respondent had a mental block causing procrastination. In light of the fact that respondent herein has no disciplinary history other than admonitions, we prefer to adopt the Committee's lesser recommended sanction.

As for respondent's mitigating psychological evidence, the fact that he has made this argument in a judicial proceeding suggests that his ego is not as fragile as he claims. Even were we to take his claim at face value, the recommended sanction would be appropriate. As we noted in *Matter of Pinello* (100 AD2d 64, 66, *appeal dismissed* 62 NY2d 940 [attorney disbarred for stealing escrow funds, despite emotional distress from serious family illness]): "Attorneys confronted with disciplinary proceedings often contend that they acted under extreme emotional and/or physical disturbance * * *. Yet, absent extremely unusual circumstances, not here apparent, such personal problems cannot provide justification, even in mitigation, for wrongful behavior." In the instant case, moreover, there is no reason to suppose that censure and psychological supervision would deter such misconduct by respondent in the future, as he was already admonished several times for deception and neglect, and was undergoing psychological treatment when the Sloyer incidents occurred.

Accordingly, the Committee's petition is granted, the respondent's petition is denied, and the respondent is suspended from the practice of law for five years.

SULLIVAN, J. P., ROSENBERGER, ELLERIN, WALLACH and TOM, JJ., concur.

Motion granted, cross motion to disaffirm denied, and respondent suspended from the practice of law in the State of

New York for a period of five years, effective April 23, 1998, and until the further order of this Court.