[891 NYS2d 342]

In the Matter of VERNELL A. CLARKE (Admitted as VERNELL ASHTON CLARKE), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, December 10, 2009

APPEARANCES OF COUNSEL

*Alan W. Friedberg, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Naomi F. Goldstein* of counsel), for petitioner.

*Freeman, Nooter & Ginsberg* (*Louis M. Freeman* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent Vernell A. Clarke was admitted to the practice of law in the State of New York by the First Judicial Department on June 12, 1991 under the name Vernell Ashton Clarke. At all times relevant to his misconduct, respondent maintained an office for the practice of law within the First Judicial Department. By order entered October 12, 2006, this Court indefinitely suspended respondent from the practice of law upon the basis of his failure to register with the Office of Court Administration (OCA). According to OCA's records, respondent has been delinquent in his attorney's registration since 1999. Respondent was unaware of his interim suspension until March 2007 and has voluntarily remained suspended pending the resolution of this proceeding.

The Departmental Disciplinary Committee now seeks an order pursuant to 22 NYCRR 605.15 (e) confirming findings of fact and conclusions of law made by the Referee and Hearing Panel, and suspending respondent from the practice of law for five years. The motion is predicated on findings that respondent engaged in a pervasive pattern of misconduct by deceiving his employer, Fidelity National Insurance Company (Fidelity), and four of Fidelity's clients, with respect to work that he completely failed to perform in five separate matters (Code of Professional Responsibility DR 1-102 [a] [4] [22 NYCRR 1200.3 (a) (4)]), and by neglecting a total of six matters involving five separate clients (DR 6-101 [a] [3] [22 NYCRR 1200.30 (a) (3)]).

By his answer and prehearing stipulation of facts, respondent has conceded all of the factual allegations and admitted liability to all of the charges against him. As a result, the sole issue before us is the sanction to be imposed.

The charges, respondent's admissions and his subsequent testimony indicate that he engaged in a pattern of deception to

conceal his neglect of matters assigned to him. During the relevant time period, respondent was New York Area Counsel for Fidelity. The first neglected matter began in 2001, when Fidelity assigned respondent to underwrite and supervise a series of mortgage refinance transactions affecting two parcels of land in Manhattan. After the entire transaction had closed, respondent failed to record the mortgage documents, nor did he cause any Fidelity employee to record them. Respondent concealed his neglect by: (1) falsely assuring counsel to the lender in an April 1, 2003 letter that the documents were recorded on January 23, 2003, and; (2) forwarding fraudulent endorsements to the Fidelity loan policies delivered at the closing, which falsely stated that the mortgage instruments were recorded on January 23, 2003 and reciting City Register filing number (CRFN) information which actually referred to completely unrelated transactions.

In the second matter, the same client engaged Fidelity in 2006 to insure a refinance transaction involving the mortgages on the same properties as the first matter, which involved new money being secured by a new mortgage on each property. Continuing to conceal his prior neglect, respondent issued a title commitment on behalf of Fidelity which recited the same fraudulent CRFN information as contained in the 2003 endorsements. Based upon the new title commitment issued by respondent, the lender closed the loan transaction on October 13, 2006 and Fidelity insured the new mortgage loan, unaware that the original loan documents had never been recorded. Fidelity was thus unable to record the 2006 loan documents.

In the third matter, respondent became responsible in 2003 for the refinancing by related entities of numerous sites in connection with a bankruptcy reorganization. Although a closing took place on December 24, 2003 and respondent recorded some documents in early July 2004, he did not record other documents until January 2005, and still others as late as April 2006. He never recorded the mortgage documents with respect to subject sites in Suffolk County. Respondent concealed his neglect by preparing and then by sending, or causing his assistant to send to the lender's counsel, on July 20, 2005, an endorsement which contained false CRFN information for documents that, at the time of its issuance, had not been recorded and for documents that respondent never recorded. When, in April 2006, Fidelity was advised by a borrower's counsel that the Suffolk County mortgages had never been recorded, respondent told a

Fidelity executive that he would personally record the documents, but he never did so. Nor did he ever direct any Fidelity employee to do so.

The fourth matter began in or about 2005, when Fidelity was employed to, inter alia, issue a title insurance policy insuring the vesting of title in a family partnership. Following the July 31, 2005 execution of two necessary deeds, upon receipt of same, respondent failed to record the deeds. Following an inquiry from the family's counsel by letter dated August 29, 2006, respondent assured counsel that the deeds had been recorded. He also forwarded official recording cover pages which he had fabricated and on which respondent had superimposed the facsimile signature of the City Register and the facsimile seal of the City of New York, which falsely indicated that the deeds were recorded on May 18, 2006. They contained bogus CRFN information from duly recorded instruments affecting entirely different properties in Queens.

In the fifth matter, a client retained Fidelity in May 2006 to provide title insurance for a transaction. Fidelity directed respondent to, inter alia, record release documents evidencing the satisfaction of three separate mortgages and the recording of three UCC release documents. Respondent failed to file any of those documents, nor did he direct any employee of Fidelity to record them. In response to four previous e-mails from Fidelity's Dallas office inquiring about the recording status of the documents, respondent sent an e-mail on August 28, 2006 falsely stating that the documents were recorded on August 21, 2006. In a subsequent September 8, 2006 e-mail to the Dallas office, respondent attached six documents fabricated by him to indicate that all of the documents had been recorded. Each page included respondent's false CRFN information (obtained from other duly recorded instruments regarding unrelated property), superimposed with the facsimile seal of the City Register and the facsimile seal of the City of New York.

The client owed combined state and city transfer taxes for these transactions totaling $472,500 and, at the June 16, 2006 closing, executed the appropriate transfer tax returns and advanced $472,500 to Fidelity to issue checks to the Department of Finance. However, respondent failed to file either the state or city transfer tax returns within the appropriate statutory period, and, in fact, never filed those returns. In December 2006, Fidelity discovered that the accounting file for the client still showed a positive balance of $472,500. When confronted,

respondent falsely advised Fidelity's accounting personnel that the transaction had not closed on June 16, 2006. In support of this false assertion, respondent produced transfer tax returns which he altered to reflect a change of the date of transfer from June 16, 2006 to November 30, 2006, which would have made the transfer tax due still within the respective statutory periods. As a result of respondent's failure to pay the transfer taxes in the statutory period ending in July 2006, approximately $159,000 in penalties and interest accrued on the unpaid taxes until respondent's misconduct was discovered in December 2006. Fidelity thereafter immediately paid the penalties and interest.

Finally, a sixth matter began in October 2001 when respondent was assigned by Fidelity to underwrite and supervise the closing on the sale of a Manhattan condominium unit for $7,100,000. The City Register's office rejected Fidelity's closing documents because of errors and it was respondent's responsibility to address the errors and to forward the corrected documents to the City Register. However, respondent never made the corrections, he failed to have the documents recorded, and, in fact, the original documents were still in a file in his office when Fidelity terminated respondent in December 2006.

Further, at the time of the October 2001 closing, the client executed tax returns and advanced $131,941.44 to Fidelity to cover combined state and city transfer taxes due on the transaction. However, respondent never filed the tax returns, which resulted in penalties and interest accruing in the amount of $97,566.86. Fidelity paid the $97,566.86 in 2006 when it discovered respondent's misconduct.

A hearing was held before a Referee on November 21, 2008. Respondent testified, as did M. Geraldine Hoban, Ph.D., his treating psychologist. Dr. Hoban testified that she had been treating respondent for clinical depression since September 2005. Because of respondent's self-admitted alcohol and drug abuse, she initially referred respondent to a substance abuse program, which he completed in January 2006. While Dr. Hoban was able to state with a reasonable degree of psychological certainty that respondent's depression was a major contributing factor to his neglect of legal matters, she could not conclude that respondent's depression and "self-destructive" behavior were causally linked to his repeated acts of intentional deceit. She also stated that at the time she diagnosed respondent's depression, she was unaware of these deliberate actions.

Respondent himself acknowledged that while prescribed medication was effectively alleviating his depression by 2006, he continued to engage in fraudulent misconduct during that period.

On April 18, 2009, the Referee issued a report in which he recommended a five-year suspension, noting the $250,000 that respondent's actions had cost Fidelity, his forging of documents to conceal his neglect, and the questionable causative role respondent's depression played in his deceptive conduct. A Hearing Panel convened on June 15, 2009 to review the Referee's report. As it was before the Referee, the only issue before the Hearing Panel was sanction.

By an undated report and recommendation, the Hearing Panel confirmed the findings of fact and conclusions of law made by the Referee, specifically noting Dr. Hoban's inability "[t]o conclude that [respondent's] efforts to conceal his neglect were a result of his depression," and modified the recommended five-year sanction to the extent that the Panel suggested that the suspension be applied nunc pro tunc to March 2007, the time when respondent became aware of his interim suspension for failure to register with OCA.

The Committee now moves for an order confirming the Hearing Panel determination in its entirety and suspending respondent from the practice of law for five years. In so moving, the Committee expressly takes no position with respect to the Panel's recommendation that the suspension be retroactive. Respondent joins in the Committee's request to confirm the Hearing Panel determination, but urges a suspension period which is retroactive to March 2007.

Given respondent's pattern of misconduct, his repetitive fabrication of documents to deceive his clients and Fidelity, and the large financial loss borne by Fidelity as a result of respondent's misconduct, a substantial suspension is warranted (*see Matter of Furtzaig*, 305 AD2d 7 [2003] [five-year suspension for neglect of six legal matters, forging of court orders and a bond, despite remorse and a history of depression]; *Matter of Kantor*, 241 AD2d 103 [1998], *lv denied* 92 NY2d 813 [1998] [five-year suspension for, inter alia, making material misrepresentations to client and creating false court documents in elaborate scheme to convince client that action was pending]).

Further, we direct that the suspension be prospective. Respondent's indefinite suspension was due to misconduct (continued failure to register), which was entirely independent

of the serious misconduct for which he was charged herein, and in violation of Judiciary Law § 468-a. This is not a case where a respondent was suspended on an interim basis (either pursuant to 22 NYCRR 603.4 [e] [1] or a "serious crime" matter) and where this Court would follow its usual practice in such a case of ultimately suspending or disbarring the attorney nunc pro tunc based upon the same misconduct which resulted in the interim suspension. Moreover, respondent obviously knew that registration was required, having done so consistently from the time of his initial admission until 1998. Thus, his subsequent failure to register from 1999 forward must be considered as more than a mere inadvertence and respondent should not profit from it by having his suspension made retroactive to the date of his suspension.

Accordingly, the Committee's petition for an order confirming so much of the Hearing Panel's determination as confirmed the Referee's findings of fact and conclusions of law and recommended a five-year suspension from the practice of law should be granted, so much of the aforesaid determination as recommended that the suspension be applied nunc pro tunc to March 2007 disaffirmed, and respondent is suspended from the practice of law in the State of New York for a period of five years, effective the date of this Court's order.

MAZZARELLI, J.P., MOSKOWITZ, ACOSTA, FREEDMAN and RICHTER, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of five years, effective the date hereof.