[917 NYS2d 126]

In the Matter of DAVID A. DORFMAN (Admitted as DAVID ALAN DORFMAN), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, January 27, 2011

## APPEARANCES OF COUNSEL

*Alan W. Friedberg, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Kevin P. Culley* of counsel), for petitioner.

*Richard M. Maltz*, for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent was admitted to the practice of law in the State of New York by the Second Judicial Department on March 25, 1992 under the name David Alan Dorfman. At all times relevant to this proceeding, respondent has maintained an office for the practice of law in the First Judicial Department.

This matter was the subject of a prior disciplinary proceeding arising out of misrepresentations respondent made to a client, Ricky Baker, in a resume (304 AD2d 273 [2003]). After being hired by Baker to bring suit against the New York City Department of Health as a result of a medical testing error, respondent failed to file a timely notice of claim and failed to seek leave to file a late notice, resulting in dismissal of the action and prompting Baker to bring suit for legal malpractice and fraud in the Southern District of New York (*Baker v Dorfman*, 1999 WL 191531, 1999 US Dist LEXIS 4451 [SD NY 1999], *affd* 239 F3d 415 [2d Cir 2000]). A federal jury found that respondent had indeed induced Baker to retain him by furnishing a resume that patently misrepresented respondent's experience as a litigator. The jury awarded Baker compensatory damages of $360,000 and punitive damages of $25,000 (*id.*).

In the previous disciplinary proceeding, this Court found that respondent:

> "violated Code of Professional Responsibility DR
> 1-102 (a) (4) (22 NYCRR 1200.3) by making mate-
> rial misstatements in his resume that deceived his
> client, which constituted fraudulent and dishonest
> conduct; that he violated DR 6-101 (a) (1) (22
> NYCRR 1200.30) by undertaking representation on
> a matter that he knew or should have known he
> lacked the competence to handle, without associat-
> ing himself with a lawyer who would have been
> competent to handle the matter; that he violated
> DR 6-101 (a) (3) in that he neglected a legal matter
> by failing to seek court permission to file a late no-
> tice of claim and failing to file the complaint until
> after the statute of limitations had expired; and that
> his initial failure to make required payments in sat-
> isfaction of the judgment against him reflected

adversely on his fitness as a lawyer in violation of DR 1-102 (a) (5) and (7)" (304 AD2d at 275).

Due to respondent's inexperience as a lawyer, his lack of disciplinary history and expression of remorse, among other factors, we deemed public censure to be the appropriate sanction for his professional misconduct (*id.*).

Baker's attempts to collect on the judgment were frustrated by respondent's formation of a professional limited liability corporation (PLLC), resulting in a further federal action declaring the PLLC to be respondent's successor in interest (*Baker v Dorfman*, 2000 WL 1010285, 2000 US Dist LEXIS 10142 [SD NY 2000], *affd* 232 F3d 121 [2d Cir 2000]). The PLLC then sought and was awarded protection in bankruptcy. Baker and respondent entered into a bankruptcy stipulation in the reduced amount of $175,000 plus interest, to be paid over a period of 10 years. When respondent made only a few payments under the agreement, Baker brought a breach of contract action in federal court, culminating in a magistrate's recommendation that respondent be directed to make payment under court order, under penalty of civil contempt for any lapse (*see Baker v Dorfman*, 2005 WL 742692, 2005 US Dist LEXIS 796 [SD NY 2005]). The court, noting that respondent "has continually defaulted on his payments to Baker," adopted the recommendation (*Baker v Dorfman*, 2005 WL 713329, \*4, 2005 US Dist LEXIS 5045, \*10 [SD NY 2005]).

After respondent repeatedly failed to make payments required under the agreement, the federal court modified its order and imposed various restrictions on respondent, inter alia, limiting his business and personal expenditures and generally confining his personal travel to the City of New York and his business travel to New York State and New Jersey (*Baker v Dorfman*, 2006 WL 988756 [SD NY 2006]). The order was subsequently modified and certain provisions added, but respondent's compliance was still not forthcoming. The federal court—indicating that respondent may have violated added requirements to report expenses in excess of $100, to limit hiring at his law firm and restrict support staff to two full-time staff members—referred the matter for prosecution by the United States Attorney for the Southern District of New York (*Baker v Dorfman*, 2006 WL 988747 [SD NY 2006]). Respondent ultimately pleaded guilty to one count of criminal contempt in violation of 18 USC § 401 (3), and on December 19, 2007, the court sentenced him to two years' probation, including six days' community confinement in a halfway house.

On March 12, 2009, the Disciplinary Committee filed a petition seeking an order finding that the criminal contempt conviction constitutes a "serious crime" under Judiciary Law § 90 (4) (d) and directing that respondent show cause before the Committee why a final order of censure, suspension or disbarment should not be made. By unpublished order entered June 12, 2009, this Court granted the serious crime petition and directed respondent to appear for a hearing on the appropriate sanction. Meanwhile, on April 2, 2009, respondent was charged in the Southern District with violating his probation.

In testimony before a Hearing Panel in October 2009, respondent disclosed that in the spring of that year, after the instant "serious crime" petition was filed, he settled the *Baker* judgment for $50,000 using money provided by his wife. Respondent acknowledged that he had engaged in professional misconduct resulting in the malpractice judgment against him. As to his guilty plea to criminal contempt for engaging more than two full-time employees without court leave, respondent simply stated that he "took responsibility for everything that was done" because he was "in charge," leading the Committee to assert in the petition that while respondent "accepts liability for his misconduct, he does not accept responsibility for his misconduct."

As to his violation of probation on May 28, 2009, respondent pleaded guilty to traveling outside the judicial district without court leave—to Paris in 2008 and to Rome in March 2009. Respondent also pleaded guilty to lying to a probation officer in March 2009 concerning the Paris trip, which he only acknowledged after being required to produce his passport for inspection. While professing unawareness of the travel restrictions before the Hearing Panel, respondent had conceded such knowledge at his plea allocution some four months earlier. In a post-hearing submission that included documents relevant to his probation violation, respondent admitted that, in addition to the two European trips, he had traveled to Arizona and Boston in 2008 without court leave.

On August 6, 2009, respondent was sentenced in Federal District Court on the probation violation. While commenting on respondent's "various dishonest and deceptive maneuvers to avoid paying a judgment that he owed Mr. Baker," which was construed as a "pattern of deception," the court concluded that "this is something deeply embedded in his character, not something that's going to change . . . during a period of supervi-

sion." The court thereupon sentenced respondent to 30 days' imprisonment without any further period of supervision.

In mitigation, the Hearing Panel noted that the reason for respondent's European travel was to participate in marathons in connection with his fund-raising efforts on behalf of the Leukemia & Lymphoma Society, which was prompted by his diagnosis with lymphoma. The Panel also noted that respondent's malpractice in connection with the *Baker* matter had already been the subject of a judgment in federal court and a prior disciplinary proceeding in this Court.

The Hearing Panel concluded that respondent's failure to accept responsibility for his professional failings was aggravated by his lack of candor in misrepresenting that he was unaware of the travel restrictions imposed by the federal court. Not only were the particular restrictions contained in the judgment of probation provided to him at his December 2007 sentencing, restrictions on personal travel outside New York City were incorporated into the court's prior order issued in June 2005. The Panel recommended a suspension of two years. Respondent proposes that he be suspended for a period of six months. The Disciplinary Committee now moves for an order confirming the Panel's recommendation (22 NYCRR 603.4 [d]; 605.15 [e] [2]).

There is no question that a conviction of criminal contempt constitutes a serious crime for which a period of suspension may be imposed (*see e.g. Matter of Cutler*, 227 AD2d 8 [1996] [six-month suspension]). While respondent was sentenced for his contumacy, satisfaction of the judgment to which his contempt related was only motivated by the commencement of the instant disciplinary proceedings. While this Court accepts that respondent's travels were undertaken for a worthy purpose, it remains that he made no attempt to obtain the requisite leave of court and subsequently demonstrated a lack of candor, both to his probation officer and the Hearing Panel, concerning his awareness of the restrictions imposed on his mobility. Maintaining that his misconduct was not undertaken with a venal motive, respondent notes that it relates to a single matter and attributes his repeated violations of court orders to a "failure to focus" on the terms of his probation. Yet respondent displayed remarkable focus in his efforts to avoid making payments on the *Baker* judgment, including resorting to the reorganization of his law practice as a PLLC, bankruptcy, and willful disobedience of court orders, all of which were exacerbated by his violation of the terms of his probation and his misrepresentations

before the Hearing Panel. The extent of an attorney's misconduct may warrant a substantial sanction even where only a single matter is involved (*see Matter of Kantor*, 241 AD2d 103 [1998], *lv denied* 92 NY2d 813 [1998] [five-year suspension where fraud was concealed over a four-year period]). The sustained pattern of misconduct that preceded respondent's criminal contempt conviction is inconsistent with either inadvertence or the absence of venal intent, and respondent's postconviction duplicity is hardly an indication of remorse. Thus, suspension for a period of one year is warranted (*see Matter of Leeds*, 87 AD2d 96 [1982] [attorney convicted of criminal contempt and sentenced to 30 days' incarceration suspended for one year where no remorse expressed]; *compare Matter of Giampa*, 211 AD2d 212 [1995], *lv denied* 86 NY2d 731 [1995], *cert denied* 516 US 1009 [1995] [attorney engaged in contemptuous behavior in five separate cases, some resulting in criminal contempt convictions, suspended for one year where no remorse shown]).

Accordingly, the Committee's motion should be granted and respondent suspended from the practice of law in the State of New York for one year.

TOM, J.P., MAZZARELLI, ANDRIAS, DEGRASSE and FREEDMAN, JJ., concur.

Respondent suspended as an attorney and counselor-at-law in the State of New York for a period of one year, effective the date hereof.