[921 NYS2d 204]

In the Matter of JOEL A. SILBERMAN (Admitted as JOEL ALAN SILBERMAN), a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, March 29, 2011

## APPEARANCES OF COUNSEL

*Jorge Dopico, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Stephen P. McGoldrick* of counsel), for petitioner.

*Richard M. Maltz*, for respondent.

## OPINION OF THE COURT

Per Curiam.

Respondent was admitted to the practice of law in the State of New York by the Second Judicial Department on September 24, 1986 under the name Joel Alan Silberman. At all times relevant to these proceedings he maintained his principal place of business within this Judicial Department.

In 1999, while still practicing law, respondent bought a building with a restaurant which he named Chameleon. In late 2000, respondent started to cook at the restaurant at night while practicing law during the day. In early 2003, Victor Maldonato began coming to Chameleon's bar and offered respondent cocaine, which he accepted. Over time, respondent's drug use escalated and Victor started to sell drugs on the premises, allegedly soliciting sales inside Chameleon and making them outside. Respondent claims that he never profited from these sales.

As his addiction worsened, respondent allegedly realized that his life had become unmanageable and he tried to sell Chameleon. In September 2003, he opened a second restaurant called Onyx, where he was executive chef. In early 2004, before the proposed sale of Chameleon could be closed, the police raided the restaurant. Respondent was arrested a few weeks later.

On November 9, 2004, respondent pleaded guilty to the sixth count of an indictment accusing him and Dominic Sclafani of criminal sale of a controlled substance in the third degree (Penal Law § 220.39 [1]), a class B felony. Respondent agreed to participate in the ASPIRE (Alternative Sentencing Pre-Indictment Rehabilitation Effort) program with the understanding that if he successfully completed the program and was not rearrested, he would be allowed to withdraw his felony plea, plead guilty to a class A misdemeanor, and be sentenced to time served. By order entered May 11, 2006 (*see Matter of Silberman*, 31 AD3d 21 [2006]), this Court struck respondent's name from the roll of attorneys based on automatic disbarment as a result of his conviction of a felony as defined by Judiciary Law § 90 (4) (e).

On November 2, 2006, after successfully completing the ASPIRE program, respondent pleaded guilty to criminal possession of a controlled substance in the seventh degree (Penal Law § 220.03), a misdemeanor, and received a sentence of time served. On November 6, 2006, Supreme Court vacated respondent's felony conviction in accordance with his plea agreement, and dismissed all pending criminal charges against him. Respondent then moved before this Court for an order vacating his disbarment and reinstating him to practice. The Committee cross-moved for an order immediately suspending respondent based on substantial admissions made during his plea allocution and other uncontested evidence of professional misconduct in violation of Code of Professional Responsibility DR 1-102 (a) (3) and (7) (22 NYCRR 1200.3 [a] [3], [7]), and referring the matter for the commencement of a disciplinary proceeding based on a formal statement of charges.

On May 2, 2007, at his deposition by the Committee, respondent disputed the counts charging him with selling a controlled substance and maintained that his criminal liability and decision to plead guilty was predicated on the sale of drugs in his restaurant. When asked to explain, he replied:

"Well I never sold narcotics to any individual, any patron, any police officer. However, because the sales did occur and there was pretty strong evidence that it did occur on my premises - and as I said, I was holder of the liquor license. I was an attorney at the time. I took responsibility and I believe that I was responsible for the activity that went on in the bar. Whether that's called a direct sale or an indirect sale, I probably was guilty in the sense that I—I indirectly was guilty of the sale because I allowed it to occur on my premises. And obviously since I did know that there was drug use on my premises, I had an obligation to do something. You know, at the point—because my own drug use had gotten out of control I felt uncontrollable and unable to really correct this problem which was a lot bigger than me at that point, pretty much [unclear] the restaurant. I really, you know, I didn't do the right thing . . . I denied the existence of the problem for myself and for the restaurant. And I allowed it to occur and [in] that sense I allowed the sale to occur.

"In addition . . . I believe on one occasion I did have a conversation with an undercover officer who had asked me if I knew anyone who sold drugs and I said yes, you could talk to Victor. And obviously that's a prime offer. That's facilitation of the sale. So whether it's a sale or facilitation I was guilty of talking to the police officer and pointing them—or as I say, steering them to somebody who I did know was selling drugs."

While respondent added that there was no physical evidence "that would have suggested that I was physically selling drugs or in control of an enterprise, so to speak," he did acknowledge that he was told by the District Attorney that his codefendants said he was the ring leader and that there were police statements implicating him. In this regard, respondent complained that he was deprived of his right to testify before the grand jury.

By order entered March 10, 2009 (*Matter of Silberman*, 62 AD3d 61 [2009]), this Court vacated the order of disbarment. Although we found that respondent's misdemeanor conviction under Penal Law § 220.03 was not a "serious crime" as set forth in Judiciary Law § 90 (4) (d), this Court found it appropriate to immediately suspend respondent from the practice of law and refer the matter to a Hearing Panel to "conduct a hearing with respect to the appropriate sanction to be imposed upon respondent in response to whatever charges the Committee may deem appropriate to bring against respondent, which the Committee is directed to file with the Hearing Panel forthwith." This Court suggested that, as in *Matter of Biaggi* (170 AD2d 139 [1991]), "the Hearing Panel may wish to fashion an additional recommendation in its report for appropriate relief in light of the present posture of this matter. . . ." (*Silberman*, 62 AD3d at 66).

Pursuant to our order, the Committee served charges alleging that by possessing and engaging in the distribution of illegal narcotics, respondent engaged in illegal conduct that adversely reflects on his honesty, trustworthiness, or fitness as a lawyer in violation of DR 1-102 (a) (3) (charge one), and thereby engaged in conduct that adversely reflected on his fitness as a lawyer in violation of DR 1-102 (a) (7) (charge four). The Committee also alleged that by giving testimony during his May 2, 2007 deposition which directly contravened the admissions made to Supreme Court during his November 9, 2004 plea allocution, respondent engaged in conduct involving dishonesty, fraud, deceit

or misrepresentation in violation of DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]) (charge two), which conduct was prejudicial to the administration of justice in violation of DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]) (charge three).

The Hearing Panel, in a report dated February 26, 2010, recommended that charges one and four should be sustained, charges two and three should be dismissed, and that respondent should be suspended from the practice of law nunc pro tunc from November 9, 2004 for a period of "time served," and immediately reinstated to the practice of law without further proceedings.

In recommending that charges one and four be sustained, the Hearing Panel found that based on his admissions regarding his drug use and permitting the sale of narcotics to occur in his restaurant, respondent was guilty of illegal conduct that adversely reflected on his fitness as a lawyer at the time of the conduct. In recommending that charges two and three be dismissed, the Hearing Panel rejected the Committee's argument that respondent "recanted" his plea admission that he sold drugs. The Hearing Panel found that during the plea allocution, respondent simply admitted to the charge as read to him with no further questions about his involvement in the sale, which also involved another individual and that "there was no discussion or exploration as to whether Respondent engaged in the actual hand-to-hand sale of drugs or was guilty based on another theory of culpability, such as steering customers to Victor." In this regard, the Hearing Panel noted that the latter conduct might only amount to criminal facilitation in the fourth degree (Penal Law § 115.00) if the "steerer" did not share the seller's intent to sell but merely rendered aid to the seller, or it could also constitute criminal sale based upon accomplice liability (Penal Law §§ 20.00, 220.39 [1]). Moreover, the Hearing Panel pointed out that respondent entered his plea on advice of counsel which provided for treatment and, if successful, the withdrawal of a felony plea and a non-jail disposition of a misdemeanor. In addition, the plea was accepted by the court and prosecutor, and respondent "should not be deemed to have admitted conduct which was not necessary to the disposition."

In recommending that respondent be suspended from the practice of law nunc pro tunc from November 9, 2004, and that the suspension should be limited to "time served" and respondent immediately reinstated, the Hearing Panel found respon-

dent was fit to resume the practice of law as his successful reha-
bilitation was undisputed, he had remained drug-free for six
years, he was running a successful family-oriented restaurant,
he performed numerous community service activities and he
had no disciplinary record.

Respondent now seeks an order confirming the Hearing
Panel's report in its entirety and immediately reinstating him
to the practice of law. The Committee has submitted a response
requesting that this Court "issue an Order confirming the Hear-
ing Panel Determination insofar as it sustained Charges One
and Four and recommended respondent's suspension *nunc pro
tunc* to November 9, 2009 and directing such other and further
relief as the Court deems appropriate under the circumstances."
The Committee points out that the Hearing Panel's decision to
sustain charges one and four and recommend essentially a ret-
roactive suspension in excess of five years "underscores the fact
that respondent engaged in serious, drug related misconduct."

The motion by respondent for an order confirming the Hear-
ing Panel's report in its entirety and to reinstate respondent
without further proceedings should be granted in part and
denied in part. For the reasons stated by the Hearing Panel,
charges one and four should be sustained. However, charges two
and three should also have been sustained and the Hearing
Panel's report dismissing those charges should be disaffirmed.

We cannot agree with the Hearing Panel that in the absence
of any evidence that respondent "actually engaged in the hand-
to-hand sale of narcotics, his deposition testimony is easily
reconcilable and harmonious with his in-court plea allocution."
While the Hearing Panel found that conduct "such as steering
customers to Victor" might only amount to criminal facilitation
in the fourth degree (Penal Law § 115.00) if the "steerer" did
not share the seller's intent to sell but merely rendered aid to
the seller, the fact remains that the sixth count of the indict-
ment charged respondent and Sclafani, not Victor, with criminal
sale of a controlled substance in the third degree in violation of
Penal Law § 220.39 (1). At his allocution, respondent expressly
and unequivocally admitted his guilt to that charge:

> "THE COURT: The charge in the sixth count of the
> indictment is that you and Dominic [Sclafani] in
> New York County, New York City on or about Feb-
> ruary 4 of 2004 knowingly and unlawfully sold
> cocaine to a police officer known to the grand jury.
> Do you understand that charge?

"[RESPONDENT]: Yes, I do.

"THE COURT: Is that charge true?

"[RESPONDENT]: Yes, it is."

Contrary to the Hearing Panel's finding, when respondent testified before the Committee he patently recanted this admission. When asked if he knew Sclafani, respondent replied that he was "a patron of the restaurant." When asked if he sold or attempted to sell a controlled substance with Sclafani on February 24, 2004, he replied: "No, I did not. No, I did not." When asked if Sclafani attempted to sell a controlled substance that day, respondent replied: "I don't know."

These responses were part and parcel of respondent's attempt to distance himself from the admission at his allocution that he and Sclafani knowingly and unlawfully sold cocaine to a police officer by claiming that he only felt responsible for the drug sales because he allowed them to occur in his bar. Although respondent admitted that Victor had brought his friends to the bar and it "became a haven for people hanging out buying drugs, doing drugs," and that Victor sold drugs, respondent repeatedly denied that he himself was involved in selling the drugs. Respondent also denied knowing whether Victor and Kjiel Lucas, individually or in concert, sold a controlled substance in the bar on December 16, 2003, December 30, 2003, February 23, 2004, January 14, 2004 and February 24, 2004, as charged in counts one through five and seven of the indictment. He similarly denied selling a controlled substance with Lucas on February 25, 2004 and March 9, 2004, as charged in counts eight, nine, ten and eleven of the indictment. Indeed, respondent denied knowing Lucas and testified that the police just "sort of linked" his name to Lucas in the counts charging the two of them with sales.

By deliberately recanting his plea and dissembling, under oath during a deposition before the Committee, his role in the drug activities that took place in his bar, respondent deliberately and intentionally engaged in deception and failed to cooperate with the Committee in violation of DR 1-102 (a) (4) and (5) (see Matter of Kantor, 241 AD2d 103 [1998], lv denied 92 NY2d 813 [1998]; Matter of Stein, 189 AD2d 128 [1993]; Matter of Racer, 56 AD3d 125 [2008]).

As to the appropriate sanction, respondent has not practiced law since at least November 9, 2004, the date he pleaded guilty to a drug felony, over six years ago. After completing an

intensive drug rehabilitation program, he now stands convicted of a misdemeanor offense and remains drug free. Respondent has presented substantial and impressive evidence that he has successfully turned his life around and that he is fit to resume the practice of law. In mitigation, respondent testified that subsequent to his completion of the ASPIRE drug treatment program he sold his interest in Onyx and opened a successful, family-style sandwich shop in the Union Square area. Respondent created a not-for-profit organization providing work training at that shop for older high school students; he provides assistance to recovering drug addicts through Beth Israel Hospital; he has provided free meals to the homeless during the holiday season, and he has engaged in other community activities.

In addition, at the hearing, Donna Boundy of the Daytop drug rehab program testified that respondent was a "stand out," that he had a great attitude, was remorseful and motivated, that he was given great trust by the program insofar as he was given the responsibility of escorting other residents outside the facility, and that during a kitchen incident, respondent attempted to spare other residents from any injury by spilling sauce over himself instead. Numerous character letters were also submitted noting respondent's strong work ethic and teaching skills, and that respondent has included his shop in the internship/mentoring program, as well as respondent's involvement as a guest speaker and panelist at student events and competitions.

Given the passage of time and these exceptional mitigating circumstances, the Hearing Panel's recommendation that respondent be suspended nunc pro tunc from November 9, 2004, and that his suspension should be limited to "time served" is appropriate (*see Matter of Keiser*, 304 AD2d 96 [2003]). Notwithstanding respondent's troubling and disingenuous recantation and our belief that charges two and three should also be sustained, in light of the present posture of this matter, the Hearing Panel is correct that it would serve no purpose to further delay respondent's reinstatement by requiring further proceedings (*see e.g. Matter of Hecht*, 253 AD2d 98 [1999] [suspension imposed nunc pro tunc to interim suspension and reinstated attorney with no further proceedings]; *see also Matter of Levin*, 261 AD2d 74 [1999] [same]).

Accordingly, respondent's motion should be granted in part and denied in part. The Hearing Panel's report sustaining charges one and four should be confirmed, and respondent

should be suspended from the practice of law nunc pro tunc as of November 9, 2004 (date of felony conviction) for a period of "time served" and reinstated immediately, and his name restored to the roll of attorneys authorized to practice law in this state. The Hearing Panel's dismissal of charges two and three should be disaffirmed and those charges should be sustained.

TOM, J.P., MAZZARELLI, ANDRIAS, McGUIRE and ACOSTA, JJ., concur.

Respondent suspended from the practice of law for a period of three years, nunc pro tunc to November 9, 2004; respondent reinstated as an attorney and counselor-at-law in the State of New York, effective the date hereof.