[3 NYS3d 132]

In the Matter of ANDREW ROSNER, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, March 11, 2015

130

**APPEARANCES OF COUNSEL**

*Mitchell T. Borkowsky*, Hauppauge (*Robert H. Cabble* of counsel), for petitioner.

*Victor Levin*, Garden City, for respondent.

## OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Tenth Judicial District served the respondent with a verified petition, dated December 13, 2012, containing five charges of professional misconduct arising from his representation of a plaintiff in employment litigation. After a preliminary hearing on October 25, 2013, and a hearing on February 7, 2014, the Special Referee issued a report that sustained all of the charges except charge four. The petitioner now moves to confirm the report of the Special Referee, and to impose such discipline upon the respondent as the Court deems just and proper. As such, charge four is deemed abandoned. The respondent's counsel submitted an affirmation in opposition, requesting that charges one, two, three, and five be dismissed on the ground the evidence does not support the charges, and that there be no discipline imposed upon the respondent.

The charges emanate from a common set of facts. Based upon the respondent's admissions, his sworn testimony, and the evidence adduced, we find those facts to be as follows:

On or about December 23, 2003, the respondent was retained by James Lorquet to recover unpaid compensation from his former employer, Lend-Mor Mortgage Bankers Corp., a mortgage broker. Lorquet executed a written retainer agreement, and

paid the respondent a $3,000 retainer fee. On or about January 26, 2004, the respondent commenced an action on behalf of Lorquet in the Supreme Court, Nassau County, seeking damages of approximately $22,000. By virtue of an amended complaint, filed on or about March 4, 2004, the demand for damages was increased to approximately $27,000. The defendant in the action, represented by attorney Lowell B. Davis, answered the complaint on or about March 23, 2004. In an order dated April 30, 2004, the action was transferred to the District Court, Nassau County, pursuant to CPLR 325 (d).

Initially, the respondent corresponded with Lorquet at his address in Jamaica, New York. Beginning in or about September of 2006, the respondent sent communications to Lorquet's address in Boca Raton, Florida.

In or about October 2006, the respondent attempted to settle the lawsuit with Davis for the sum of $20,000, but was unsuccessful.

As the trial date was approaching, by letter dated January 8, 2008, which was sent to Lorquet's Florida address, the respondent requested that his client contact him upon receipt. The respondent enclosed an invoice for his legal fees, and requested payment of a $5,602.08 outstanding balance. The letter was returned undelivered to the respondent's law office.

On or about January 18, 2008, the respondent spoke with one Gene Zarra, a person then unknown to the respondent, who informed him that Lorquet's mother, Andree Conserve, purportedly held a power of attorney for her son. By letter dated January 18, 2008, the respondent requested that Zarra forward to him a copy of the power of attorney. The respondent did not contact his client or Conserve at that time to confirm the correctness of the information that he received from Zarra. The respondent never received the power of attorney purportedly held by Conserve.

As reflected in a certificate of death issued by the New Jersey Department of Health and Senior Services, Lorquet died in East Orange, New Jersey, on March 12, 2008. Conserve was identified on the death certificate as the person who informed the applicable New Jersey authorities of Lorquet's death.

On April 14, 2008, the eve of trial, an agreement to settle the action for $10,000 was reached between the respondent and Davis. The respondent does not recall the specific date when he learned of his client's death, but claims that it was after the

settlement was reached. On or about April 14, 2008, the respondent sent a power of attorney form to "Marie Rose Andree Conserve," seeking her signature thereon and her authorization to sign Lorquet's name to the settlement check, and to deposit the check into the respondent's escrow account. The power of attorney was faxed to a number with a Florida area code, and to the attention of an individual named "Shirley," a person allegedly unknown to the respondent. Later that day, the respondent received, by return fax from Shirley, a signed power of attorney purportedly executed by Conserve.

Davis confirmed the settlement by letter dated April 14, 2008, and enclosed a check in the amount of $10,000 payable to James P. Lorquet and the respondent, as attorney. Davis further requested the respondent to retain this check in escrow, pending Davis's receipt of a general release and a stipulation of discontinuance. The respondent signed Lorquet's name to the settlement check, and presented it to his bank for deposit on or about April 16, 2008.

By letter dated May 30, 2008, Davis again requested that the respondent provide him with the general release and stipulation discontinuing the action or alternatively, proof that the settlement funds remained in his escrow account. In response, by letter dated June 3, 2008, the respondent confirmed that the Lorquet settlement funds remained in his escrow account. The respondent did not address the issues raised by Davis concerning the general release or the stipulation of discontinuance, did not provide proof that the funds were still in his escrow account, and did not disclose that Lorquet was deceased. From in or about June 2008 through September 2008, Davis sent three further requests to the respondent seeking the settlement documents. The respondent did not respond to Davis's requests, and did not disclose to Davis that Lorquet was deceased.

By order to show cause dated June 25, 2009, Davis moved to compel the respondent to return the Lorquet settlement funds in light of his failure to provide a general release and a stipulation discontinuing the action. In his affirmation submitted in support of that motion, Davis noted, inter alia, that the respondent had not responded to any of his letters requesting compliance with the settlement agreement, and had not responded to a more recent message left at his office.

In a letter to Davis dated July 23, 2009, the respondent asserted that the matter was stayed, and that the motion could

not be argued, but did not provide any explanation for those assertions. The respondent also enclosed redacted records for his trust account, consisting of two pages from his ledger book, indicating a deposit of $10,000, on "April 11, 2008," next to the name "Lorquet." By letter dated July 27, 2009, Davis replied, indicating, inter alia, that pursuant to the Social Security Death Index, Lorquet died on March 12, 2008, and, as such, the respondent was "without authority to settle the action as it would have been stayed at the time of death."

The respondent filed an affirmation in opposition to Davis's motion, which was dated July 29, 2009, in which he averred that he was "authorized to settle the case and deposit the funds in [his] escrow account." He asserted that he learned of his client's death shortly after settling the case on April 14, 2008, and that, since then, had made "many attempts to contact decedent's family, without success in arranging for a representative to be appointed." In his affirmation, the respondent did not disclose the specific date that he learned of Lorquet's death, from whom he learned it, the actual date of death, the identity of the family members he attempted to contact, or the nature of these attempts. Moreover, he did not disclose when he was authorized to settle the case, by whom, and on what terms. The respondent also did not divulge any details about the authorization to sign the settlement check and deposit the settlement proceeds in light of the fact that the plaintiff died prior to the settlement.

In a reply affirmation dated July 29, 2009, Davis noted that the respondent's one-page ledger was inaccurate, in that it showed a $10,000 deposit on April 11, 2008, whereas the settlement check was not drawn until April 14, 2008, and was not negotiated until April 16, 2008. Davis averred that the respondent had no authority to settle the matter on April 14, 2008, or to endorse Lorquet's name on the settlement check.

In a decision and order dated August 11, 2009, the District Court denied Davis's motion to compel the respondent to return the settlement proceeds, without prejudice to renew, following the appointment of a personal representative for Lorquet. On the District Court's own motion, the respondent was directed to appear before the court on September 15, 2009, and to produce a certified copy of Lorquet's death certificate. The respondent also was directed to produce original documentation of the deposit of the settlement check into his attorney escrow account, together with all subsequent original account statements confirming that the funds were still on deposit.

At his appearance before the District Court, the respondent produced the bank statements for his escrow account, but did not provide a death certificate. He stated that he did not know the date of Lorquet's death, or the exact date when he learned that Lorquet had died, except that it was sometime after April 16, 2008. In response to questioning by the court, the respondent acknowledged that he took no steps to notify Davis of Lorquet's death.

Charge one alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of former Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

Charge two alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of former Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]).

Charge three alleges that the respondent engaged in conduct prejudicial to the administration of justice, in violation of former Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]).

Charge five alleges that the respondent concealed or knowingly failed to disclose that which he was required by law to reveal, in violation of former Code of Professional Responsibility DR 7-102 (a) (3) (22 NYCRR 1200.33 [a] [3]).

The respondent urges this Court to find that the petitioner failed to establish the element of venal intent allegedly necessary to sustain a violation of former Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]) (charge two). Contrary to the respondent's contention, even in the absence of venal intent, "knowing and purposeful" conduct that constitutes dishonesty, fraud, deceit, or misrepresentation is sufficient to sustain a violation of DR 1-102 (a) (4) (*see Matter of Abato*, 51 AD3d 225, 228 [2008]). In any event, " 'venality' requires only a finding that the respondent deliberately and intentionally engaged in deception, and does not require a finding of malice or intent to profit" (*Matter of Kantor*, 241 AD2d 103, 105 [1998]). Here, as the Special Referee properly found, the respondent's venal intent was established by the respondent's interactions with Davis, wherein the respondent "deliberately and intentionally engaged in deception."

The Special Referee properly found that there was no evidence to support the respondent's claim that his client autho-

rized him to settle the employment litigation, or that he could do so based upon the alleged power of attorney in favor of Lorquet's mother. Moreover, once the respondent, an experienced litigator, learned of his client's death, he knew that he could not provide the requested settlement documents to Davis. While the respondent had no obligation to seek the appointment of a personal representative for the estate, the Special Referee properly concluded that the respondent had an obligation to inform Davis of Lorquet's death, thereby revealing that the settlement process could not be completed, and that further proceedings in the employment litigation were automatically stayed. We find that, despite Davis's repeated requests that the respondent provide him with the settlement documents, the respondent knowingly chose not to disclose his client's death, deceiving his adversary for more than one year (*cf. Matter of Forrest*, 265 AD2d 12 [2000]). Further, the respondent's claimed authority to negotiate the settlement check was based on his transactions with a person unknown to him. He learned from Zarra, a person then unknown to him, that Conserve, a person purporting to be his client's mother, had executed a power of attorney, and he received a power of attorney purportedly signed by Conserve from a person named "Shirley," who also was unknown to the respondent. Based on this evidence, we find that, when the respondent negotiated the settlement check, he misrepresented to the bank that he had the authority to endorse it on behalf of Lorquet.

In view of the respondent's admissions, and the evidence adduced, we conclude that the Special Referee properly sustained charges one, two, three, and five. Accordingly, the Grievance Committee's motion to confirm the Special Referee's report is granted.

In determining an appropriate measure of discipline to impose, the Court has considered the respondent's disciplinary history, which consists of one letter of caution. Under the totality of the circumstances, we find that the respondent's conduct warrants his suspension from the practice of law for a period of one year. Additionally, in light of the respondent's suspension from the practice of law, he is directed to release, forthwith, the $10,000 he is holding on behalf of his deceased client, James Lorquet, to the Lawyers' Fund for Client Protection, for safeguarding and disbursement to the person or persons determined to be entitled thereto (*see* Rules of Professional Conduct [22 NYCRR 1200.0] rule 1.15 [f]; *see also Matter of*

*Donatelli,* Sup Ct, Queens County, Jan. 8, 2003, Kitzes, J., index No. 30259/02).

ENG, P.J., MASTRO, RIVERA, SKELOS and ROMAN, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that the respondent, Andrew Rosner, is directed to release, forthwith, the $10,000 he is holding on behalf of his deceased client, James Lorquet, to the Lawyers' Fund for Client Protection, for safeguarding and disbursement to the person or persons determined to be entitled thereto; and it is further,

Ordered that the respondent, Andrew Rosner, is suspended from the practice of law for a period of one year, commencing April 10, 2015, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than October 13, 2015. In such application, the respondent shall furnish satisfactory proof that during said period he: (1) refrained from practicing or attempting to practice law, (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended and resigned attorneys (*see* 22 NYCRR 691.10), (3) complied with the applicable continuing legal education requirements (*see* 22 NYCRR 691.11 [c] [3]), and (4) otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension, and until further order of this Court, the respondent, Andrew Rosner, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Andrew Rosner, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).